THE DELAWARE & HUDSON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE DELAWARE & HUDSON COMPANY AND 32 NAMED SUBSIDIARIES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 50553, 50629. Promulgated June 27, 1932.

*Montgomery B. Angell, Esq.*, and *Marion N. Fisher, Esq.*, for the petitioners.

*F. D. Strader, Esq.*, and *Orris Bennett, Esq.*, for the respondent.

OPINION.

STERNHAGEN : The respondent determined a deficiency of $329,-530.62 in the income tax for 1923 of the petitioner, who was a member of an affiliated group filing a consolidated return. Of several issues originally found in the pleadings, all have been satisfactorily disposed of by the parties except one which remains to be decided. In this issue the petitioner assails the respondent's treatment of the statutory net losses sustained in 1922 by some of the members of the affiliated group in the computation of the consolidated net income and resulting tax for 1923. As will hereafter appear, the petitioner's contention in respect of this issue requires the consideration of two alternative suggested methods of computation.

The respondent mailed a deficiency notice to the Delaware & Hudson Company alone. That company duly filed its petition with the Board, under docket number 50553. Thereafter a second petition was filed, under docket number 50629, by the same company and thirty-two other corporations which constituted the affiliated group. Upon motion of the respondent, this latter proceeding has been dismissed in respect of all of the petitioners therein except the Delaware & Hudson Company. In respect of that corporation, the two proceedings were ordered to be consolidated, since they are in all respects identical.

The facts upon which the controversy is submitted have been stipulated as follows:

1. The Delaware and Hudson Company is a corporation organized under the laws of the State of New York, with its principal office at No. 32 Nassau Street, New York, N. Y. During the calendar years 1922 and 1923 it was the principal or parent corporation of a group of affiliated corporations hereinafter named, which filed consolidated federal income tax returns for the calendar years 1922 and 1923. The said returns were filed in the office of the Collector of Internal Revenue for the Second Collection District of New York, at the Customs House, New York, N. Y.

2. The corporations that were included in the consolidated return for the year 1922, the places of their principal offices and the states in which they were organized are as follows:

| Name | Place of principal office | | State organized |
|---|---|---|---|
| The Delaware and Hudson Co_____ | New York, N. Y. | | New York |
| The Chateaugay & Lake Placid Ry. Co_____ | " | " | " |
| Greenwich & Johnsonville Ry. Co_____ | " | " | " |
| Schoharie Valley Ry. Co_____ | " | " | " |
| The Champlain Transportation Co_____ | " | " | " |
| The Lake George Steamboat Co_____ | " | " | " |
| The Bluff Point Land Improvement Co_____ | " | " | " |
| The Fort William Henry Hotel Co_____ | " | " | " |
| The Northern New York Development Co_____ | " | " | " |
| United Traction Co_____ | Albany | " | " |
| Hudson Valley Ry. Co_____ | New York | " | " |
| Plattsburg Traction Co_____ | Plattsburg | " | " |
| Troy & New England Ry. Co_____ | New York | " | " |
| The Capitol Railway_____ | Albany | " | " |
| Cohoes Railway Co_____ | " | " | " |
| The Cooperstown & Susquehanna Valley R. R. Co__ | New York | " | " |
| The North River Railway_____ | " | " | " |
| Warren County Elec. Lt., Heat & Power Co_____ | " | " | " |
| Northern Coal & Iron Co_____ | Scranton | Pa. | Pennsylvania |
| Albright Coal Company_____ | " | " | " |
| The Schuylkill Coal & Iron Co_____ | " | " | " |
| Shanferoke Coal Company_____ | " | " | " |
| Silverton Coal Company_____ | " | " | " |
| The Jackson Coal Co_____ | " | " | " |
| Schaefer's Creek Water Co_____ | " | " | " |
| First Company of Great Western Turnpike Road_ | New York, N. Y. | | New York |
| The Hudson Coal Company_____ | Scranton | Pa. | Pennsylvania |
| Chateaugay Ore & Iron Co_____ | Lyon Mountain, | | New York |
| Cold Run Water Co_____ | Scranton | Pa. | Pennsylvania |
| Chazy Marble Lime Co_____ | New York, N. Y. | | New York |
| The Cooperstown & Charlotte Valley R. R. Co__ | " | " | " |
| The Ticonderoga Railroad Co_____ | Rutland, Vt. | | Vermont |

3. All of the aforesaid corporations named in paragraph 2, with the exception of Ticonderoga Railroad Company and Chazy Marble Lime Company, were held by the Commissioner of Internal Revenue to be affiliated for the entire calendar year 1922, and satisfied all the requirements of affiliation under the law. Ticonderoga Railroad Company was organized in 1889 by The Delaware and Hudson Company and citizens of Ticonderoga for the purpose of connecting the village of Ticonderoga with The Delaware and Hudson Company's line of railroad, and the Ticonderoga Railroad has always been operated by The Delaware and Hudson Company as a part of its railroad system. Prior to April 14, 1922, only a part of the capital stock of the Ticonderoga Railroad Company was owned by The Delaware and Hudson Company. On April 14, 1922, the remaining outstanding capital stock was acquired by The Delaware and Hudson Company, and the Ticonderoga Railroad Company was held by the Commis-

sioner to be affiliated with The Delaware and Hudson Company from April 14, 1922, to the end of that calendar year.

Chazy Marble Lime Company was organized on June 29, 1922, by the Hudson Coal Company to take title to and operate limestone properties primarily for the purpose of furnishing limestone to Chateaugay Ore and Iron Company, a member of the affiliated group. The Hudson Coal Company acquired all of the capital stock of Chazy Marble Lime Company on June 29, 1922, and the Chazy Marble Lime Company has been held by the Commissioner to be a member of the affiliated group from June 29, 1922, to the end of that calendar year.

4. The corporations named in paragraph 2 above were included in the original consolidated federal income tax return filed for the calendar year 1923 and also in an amended consolidated income tax return filed for such year. In addition there was included in the said returns, Hudson River Estates, Inc., a New York corporation with its principal office at New York, N. Y. Hudson River Estates, Inc., was organized on August 20, 1923, for the purpose of taking title to certain real property purchased by The Delaware and Hudson Company at or about that date. All of the capital stock of Hudson River Estates, Inc., was acquired by The Delaware and Hudson Company on August 20, 1923, and continued to be owned by it throughout the year 1923. All of the corporations named in paragraph 2 were held to be affiliated by the Commissioner for the entire calendar year 1923, and satisfied all the requirements of affiliation under the law, and Hudson River Estates, Inc., was held by him to be affiliated with The Delaware and Hudson Company from August 20, 1923, to the end of that year.

5. In the consolidated return for 1922 no tax liability was reported and the respondent has determined that there is no tax liability upon the petitioner or any of its affiliated companies for such year.

6. For the year 1922 the Commissioner allowed as a deduction to The Delaware and Hudson Company alone the entire allowance on account of depletion of the coal mines of both The Delaware and Hudson Company and Hudson Coal Company, whereas $197,245.04 of the total allowance for depletion should have been allowed as a deduction of Hudson Coal Company. For the same year the Commissioner erroneously included in the loss of The Delaware and Hudson Company a loss of Ticonderoga Railroad Company in the sum of $246.91. For the same year the Commissioner erroneously found that the Chateaugay & Lake Placid Railway Co. sustained a net loss of $109,390.65, whereas such loss was sustained by The Delaware and Hudson Company in that year. It is stipulated and agreed that the statutory deductions of The Delaware and Hudson Company for 1922 are overstated in the sixty-day letter by the aforesaid sums of $197,245.04 and $246.91, and are therein understated by the aforesaid sum of $109,390.65 and the statutory deductions of the Hudson Coal Company are understated in the sixty-day letter by the aforesaid sum of $197,245.04; and it is further stipulated and agreed that the correct net loss separately computed, where a net loss occurred, and the correct net income separately computed, where a net income occurred, of each of the companies in the affiliated group for the year 1922, before any deductions for dividends and nontaxable interest, and the correct dividends and nontaxable interest, if any, of such companies are as follows:

| Name | Net income | Net loss | Dividends | Nontaxable interest |
|---|---|---|---|---|
| The Delaware & Hudson Co | | $3, 180, 544. 42 | $111, 839. 09 | $22, 374. 74 |
| Greenwich & Johnsonville Ry. Co | | 15, 589. 04 | | 212. 50 |
| Schoharie Valley Ry. Co | $16, 378. 45 | | | 299. 99 |
| Champlain Transportation Co | | 5, 328. 60 | | |
| The Lake George Steamboat Co | 7. 08 | | | 212. 50 |
| The Bluff Point Land Improvement Co | | 19, 814. 88 | | 212. 50 |
| The Fort William Henry Hotel Co | | 20, 500. 77 | | 212. 50 |
| The Northern New York Development Co | 6, 388. 68 | | 5. 25 | |
| United Traction Co | | 217, 033. 95 | 10. 05 | 1, 062. 50 |
| Hudson Valley Ry. Co | | 250, 479. 06 | | 340. 00 |
| Plattsburg Traction Co | | 5, 351. 85 | | 212. 50 |
| Troy & New England Ry. Co | | 12, 729. 73 | | 212. 50 |
| The Capitol Railway | 2. 00 | | | |
| Cohoes Railway Co | 189. 78 | | | |
| First Company of Great Western Turnpike Road | 45. 14 | | | |
| The Hudson Coal Co | | 1, 730, 869. 18 | | 36, 953. 21 |
| The Chateaugay Ore & Iron Co | | 819, 751. 42 | | 1, 163. 32 |
| Cold Run Water Co | | 1, 226. 67 | | |
| Chazy Marble Lime Co | 17, 859. 16 | | | |
| The Cooperstown & Charlotte Valley Ry. Co | | 42. 03 | | |
| The Ticonderoga Railroad Co | | 246. 91 | | |
| Total | 40, 870. 29 | 6, 279, 508. 51 | 111, 854. 39 | 63, 468. 76 |

The net loss of Ticonderoga Railroad Company, $246.91, set out above, was sustained by it in the period April 14, 1922, to December 31, 1922, inclusive.

7. In 1923 The Delaware and Hudson Company sustained a deductible loss of $35,205.71 on account of the abandonment by it in 1923 of certain properties belonging to it. In 1923 the Hudson Coal Company sustained a deductible loss of $44,947.68 on account of the abandonment by it in 1923 of certain properties belonging to it. The Commissioner has inadvertently failed to allow the aforesaid deductions in his determination of the net income of the respective corporations and of the consolidated net income of the affiliated group as computed in the aforesaid sixty-day letter. The parties hereto agree that the aforesaid losses in the amounts stated were sustained in 1923 and are proper deductions from gross income in that year.

8. For the year 1923 the Commissioner erroneously allowed as a deduction to The Delaware and Hudson Company alone the entire allowance on account of depletion of the coal mines of both The Delaware and Hudson Company and Hudson Coal Company, whereas $361,409.53 of the total allowance for depletion should have been allowed as a deduction of Hudson Coal Company. For the same year the Commissioner erroneously excluded from income of The Delaware and Hudson Company and included in income of Ticonderoga Railroad Co. the sum of $41,479.02 realized by The Delaware and Hudson Company from operation of Ticonderoga Railroad Co. properties. For the same year the Commissioner erroneously failed to allow as deductions to debtor companies and failed to include in income of creditor companies accrued interest as follows:

| Payable by— | Payable to— | Amount |
|---|---|---|
| United Traction Co | The Del. & Hudson Co | $393, 159. 77 |
| The Champlain Transportation Co | " | 17, 453. 63 |
| The Lake George Steamboat Co | " | 298. 90 |
| The Ft. William Henry Hotel Co | " | 1, 800. 00 |
| The Bluff Point Land Imp. Co | " | 1, 666. 78 |
| The Northern New York Dev. Co | " | 32, 765. 62 |
| Hudson Valley Ry. Co | " | 27, 971. 20 |
| The Lake George Steamboat Co | Bluff Pt. Land Imp. Co | 2, 989. 00 |
| United Traction Co | No. N. Y. Dev. Co | 6, 399. 29 |

For the same year the Commissioner erroneously failed to allow as a deduction to Hudson Valley Railway Co. and failed to include in income of The Delaware and Hudson Company the sum of $67,291.56, rent due and payable for the use of property leased by The Delaware and Hudson Company to Hudson Valley Railway Co. For the same year the Commissioner erroneously found that the Chateaugay & Lake Placid Railway Co. sustained a net loss of $96,677.38, whereas such loss was sustained by The Delaware and Hudson Company in that year. For the same year there was not included in the consolidated income tax returns a profit of $35,000 realized by the Hudson Coal Company from the sale by it in that year of a certain parcel of real estate, and such profit was not included in the gross income as computed in the sixty-day letter.

9. On account of the errors stipulated in paragraphs 7 and 8 above, it is stipulated and agreed that the net income separately computed, where a net income occurred, and the net loss separately computed, where a net loss occurred, of each of the companies in the affiliated group, for the calendar year 1923, before any adjustment for net losses of 1922, are as follows:

| Name | Net income | Net loss |
|------|-----------:|---------:|
| The Delaware & Hudson Co | $1,706,624.66 | |
| Greenwich & Johnsonville Ry. Co | | $8,213.81 |
| Schoharie Valley Ry. Co | 13,831.10 | |
| Champlain Transportation Co | | 17,120.64 |
| The Lake George Steamboat Co | | 380.37 |
| The Bluff Point Land Improvement Co | | 2,216.46 |
| The Ft. William Henry Hotel Co | | 6,800.91 |
| The Northern New York Development Co | 2,903.01 | |
| United Traction Co | | 348,431.19 |
| Hudson Valley Ry. Co | | 341,732.37 |
| Plattsburg Traction Co | | 7,016.06 |
| Troy & New England Ry. Co | | 6,173.06 |
| The Capitol Railway | 2.00 | |
| Cohoes Railway Co | 200.71 | |
| First Company of Great Western Turnpike Road | 47.18 | |
| The Hudson Coal Co | 6,824,150.77 | |
| Chateaugay Ore & Iron Co | | 952,345.68 |
| Cold Run Water Co | | 701.30 |
| Chazy Marble Lime Co | 36,880.18 | |
| The Ticonderoga Railroad Co | 1,118.86 | |
| Hudson River Estates, Inc | | 198.01 |
| | 8,585,758.47 | 1,691,329.86 |

10. The following named affiliated corporations included in the consolidated returns had no net incomes and no net losses and received no dividends and no nontaxable interest in the calendar years 1922 and 1923:

The Cooperstown & Susquehanna Valley R. R. Co.
The North River Railway
Warren County Elec. Lt., Heat & Power Co.
Northern Coal & Iron Co.
Albright Coal Company
The Schuylkill Coal & Iron Co.
Shanferoke Coal Company
Silverton Coal Company
The Jackson Coal Co.
Schafer's Creek Water Co.
The Chateaugay & Lake Placid Ry. Co.

11. The Cooperstown and Charlotte Valley Railway Company had no net income and no net loss in 1923.

12. Under date of August 6, 1929, The Delaware and Hudson Company and all the other corporations listed in paragraph 2 above and Hudson River Estates,

Inc., duly executed and filed with the Commissioner an agreement in words as follows:

"The undersigned corporations hereby agree that any deficiency of income tax computed on the basis of consolidated returns for the years 1922 and 1923 may be assessed against and/or any overassessment of such tax for the above-named years may be abated, credited or refunded, to The Delaware and Hudson Company."

At the time that this proceeding was submitted there had been no decision of the Supreme Court in respect of the application of the statutory net loss provisions to affiliated corporations, and the argument of both parties was necessarily directed to the law as reflected in several decisions of the other courts and of the Board. Since that time the Supreme Court has decided *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, and *Planters Cotton Oil Co.* v. *Hopkins*, 286 U. S. 332, Counsel for both parties have been afforded an opportunity to present to the Board their views of the effect of these recent decisions upon the present controversy, but they have failed to do so.

As appears from the tabulated statement in subdivision 6 of the facts, in 1922 an aggregate loss of $6,279,508.51 was sustained by some of the constituent corporations, while other constituents had an aggregate net income of $40,870.29. Both parties throughout the proceeding have treated these figures as if they had no relation to the years preceding 1922; that is to say, it does not appear whether any of the figures stipulated for 1922 are affected by statutory net losses of earlier years, and the stipulation and the arguments have proceeded as if January 1, 1922, were the beginning of the first year in which the group was affected by the statutory net loss provision. Thus the taxable year 1923 is treated as if it were in all respects the " second " year, and in no respect the "third " year. Since there is no apparent reason to think otherwise, the decision is based upon that assumption.

The Commissioner made his determination in the following way: Applying the aforesaid aggregate net income of some of the members, amounting to $40,870.29, against the aggregate net loss of the other members, he arrived at the consolidated loss for 1922 of over $6,000,000. This consolidated loss was, in effect, apportioned to the constituent members of the group which had sustained net losses, in the ratio of the net loss of each such member to the aggregate loss of all such members. Thus a portion of the loss of each losing member was an offset to the income of the earning members, with the result that there was no tax for 1922 in respect of the affiliated group or any of its members. The remaining portions of the net losses were then used in the computation of the tax for 1923. See *Swift & Co.* v. *United States*, 38 Fed. (2d) 365.

In 1923 some of the members of the affiliated group had an aggregate current net income of $8,585,758.47 and the other members an

aggregate current net loss of $1,691,329.86. The Commissioner applied the current net losses against the current net incomes and found a composite current net income of almost $7,000,000. This he apportioned among the earning members, allocating to each its proportionate current net income in the ratio which its separate current net income bore to the aggregate current income of all earning members. To this apportioned current net income of each earning member he applied its 1922 apportioned net loss. If such 1922 net loss was in excess of such 1923 net income, this excess was required to be carried into the " third " year, 1924.

The petitioner's primary contention is that such excess of the 1922 net losses over the 1922 net incomes should be applied in 1923 to offset the net incomes of the other earning members. It thus argues in effect that the net loss of an affiliated group for 1922 may be used to reduce the consolidated income of the same affiliated group for 1923. The petitioner further contends that if this treatment is not permitted and it be held that the 1922 net loss of each losing member is available in 1923 to that member alone, the respondent's method is still erroneous, because it applies the separate 1922 net loss not against the full 1923 net income, but only to a reduced portion thereof.

*First.* The *Woolford* and *Planters* decisions have now settled that the affiliated group is not a taxpayer, but is only the machinery for determining the factors upon which the tax liability of each separate corporation is computed. Each corporation is a taxpayer in its own behalf. It is also clearly established that the term net income as used throughout the tax laws may not be construed to mean a loss or a mathematical minus or red figure. The Supreme Court has, we think, further indicated that the statutory net loss provisions are to be applied separately to each member of an affiliated group, and more particularly that the net loss of a corporation sustained prior to affiliation may not be applied to any extent against the net income of another corporation with which the former becomes affiliated.

It would be inconsistent with these principles to recognize a single consolidated statutory net loss, and its application as a unit in the following year to the affiliated group. The net loss provision is a special provision, and the Supreme Court has made it clear that the affiliation provisions give it no greater liberality than it otherwise provides. There is no support for the use of a statutory net loss of one corporation except to apply it to that corporation alone, and this is as true in respect of affiliated corporations as of independent corporations.

The petitioner's argument includes the view that, in section 204 (b) of the Revenue Act of 1921, the phrase " shall be deducted from the

net income" as applied to the use in the second year of the net loss is to be construed as identical in effect with the phrase applied to the third year, that the unabsorbed net loss " shall be allowed as a deduction in computing the net income." This difference in language is so plain that it can not be ignored. It is free from ambiguity and therefore precludes identical construction in any case where the difference is important. Furthermore it has been several times considered and the significance of the difference in language has been recognized, *Moore Cotton Mills* v. *Commissioner*, 49 Fed. (2d) 59. The phrases have their several meanings when the problem is to determine consolidated income, as when ascertaining whether the amount of income justifies the statutory credit. Although in some cases the effect on tax liability may be the same as if the two years were governed by the same phrase, as in the later statutes, this accidental result does not justify a disregard of the distinct phraseology or a failure to give to it whatever effect it may have in any case.

*Second.* Petitioner next urges that, in the event a single consolidated net loss of the affiliated group may not be recognized and used by the group in the second year, and each corporation's statutory net loss may be availed of by that corporation alone in the second year, such corporation is entitled to more than the respondent has allowed.

The respondent's method of computation has been to determine first each corporation's separate current net income or loss for the second year, without regard to its statutory net loss of the first year. These figures are then consolidated into a group net income. This figure is apportioned among the earning members, thus, by reason of the losses in the group, proportionately reducing the current net income of each earning member. To this separate proportionate net income is applied such corporation's prior net loss of the first year, and if such prior net loss exceeds such proportionate current net income, the excess is carried over into the third year of such separate corporation. The petitioner complains of this method because it is deprived in the second year of so much of the offsetting advantage of the statutory net loss as is measured by the difference between its full net income of the second year and its lower apportioned net income used by the respondent. More simply, the petitioner contends that since each corporation is to be separately considered in applying the net loss provision, it is entitled to have such net loss applied against its full separate net income, unreduced by reason of the loss of its affiliates.

The petitioner disclaims any double advantage from its prior net loss, conceding that the same amount may not be used both to offset

the current income of its affiliates, and the succeeding income of itself. In other words, it admits that the separate loss once absorbed may not be used again. In the present case it is admitted that so much of the 1922 loss of any corporation as was used to offset and wipe out the current 1922 income of the earning members has completely performed its function, and, therefore, may not by any means be brought into the determination of 1923. The argument, therefore, relates only to the proper method in 1923 of using the unabsorbed separate 1922 net loss.

In our opinion, the petitioner's view is correct and is supported by *Swift & Co.* v. *United States*, 38 Fed. (2d) 365, and *Ginsburg* v. *Commissioner*, 54 Fed. (2d) 238, and is consistent with *Woolford Realty Co.* v. *Rose, supra.* Indeed, we are of opinion that the petitioner's method most clearly preserves the view which the *Woolford* case has now established, while that of the Commissioner tends to perpetuate confusion.

Each corporation is a taxpayer, and the measure of its tax is its net income, giving due consideration to its statutory net loss. Being a member of an affiliated group does not change this, except as its tax liability may be reduced by reason of the losses of its affiliates (or otherwise affected by a special agreement of the affiliated corporations as recognized in section 240(b)).

In ascertaining the figure of each corporation which determines its tax there is no reason to proceed differently in respect of an affiliated corporation from the method applied to an independent corporation. In both instances, the net income reduced by prior statutory net loss measures the tax—the independent corporation's figure measuring it directly and the affiliated corporation's figure measuring the proportion of the consolidated net income properly assignable to it and the resulting apportioned tax. It would be a mathematical fallacy to omit the prior net loss in determining consolidated net income and yet determine the tax itself upon another figure resulting from the use of such loss. Clearly, the net loss must be reflected in determining the member's proportionate tax, and since such tax is apportioned in accordance with its assignable net income, the assigned net income should reflect all its component factors, of which prior net loss is one. In other words, the result of abandoning the composite method is to determine as to each member separately the figure upon which its separate tax would be measured if it were independent, and then, after setting aside the unabsorbed prior net losses for future use, applying the net earnings of the earners against the current losses of the losers and arriving at the consolidated taxable net income and resulting tax.

**530**

Thus, as to this petitioner, its net loss is first used in offsetting the 1922 net income of its affiliates, and the unabsorbed remainder is then used in 1923 to offset its own $1,706,624.66 net income. This leaves it in 1923 with nothing to tax and nothing to contribute to the affiliated group for 1923. Its remaining 1922 net loss is held for 1924.

The respondent defends his method by a bare statement that consolidated net income or loss must be computed before applying prior net losses. He illustrates what he regards as the fallacy of the petitioner's method by assuming an affiliated corporation with a net loss of $5,000 for 1922 and net income of $5,000 for 1923, while its affiliates for 1923 had a group loss of $1,000—thus, in his view, indicating a 1923 group net income of $4,000 "allocated" to the earner with a remaining $1,000 carried over to 1924. He regards it as "inequitable and contrary to the theory of consolidated returns" that by petitioner's method the corporation should "have nothing to carry over to 1924." This begs the question. The corporation has no right to carry into 1924 more than is left after offsetting its income for 1923, and its equity is no greater than the statute gives it. In the illustration given, it must, as the present petitioner claims the right to do, apply its $5,000 net loss of 1922 against its $5,000 net income of 1923, thus wiping it out, and contributing nothing to the group. Its losing affiliates will carry forward their several net losses into 1924, which they would not be permitted to do if, as respondent contends, such amount were carried over by the earner. Respondent does not elucidate his view that this is contrary to the theory of consolidated returns and we are unable to see that it is.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*