CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO (SUCCESSOR), FIRST FEDERAL TRUST COMPANY, AND EAST WATERWAY DOCK & WAREHOUSE COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39874. Promulgated October 4, 1932.

*Walter C. Fox, Jr., Esq.*, for the petitioners.
*Eugene Meacham, Esq.*, for the respondent.

OPINION.

McMahon: The petitioners in this case are the First Federal Trust Company, the East Waterway Dock & Warehouse Company and the Crocker First National Bank of San Francisco, a successor to the First National Bank of San Francisco. The First National Bank, the First Federal Trust Company, the East Waterway Dock & Warehouse Company and the Rogers Brown Transportation Company filed a consolidated return for the year 1923. For the years 1924 and 1925 the First Federal Trust Company filed individual returns and the other three filed consolidated returns. The respondent, however, ruled that all four companies were affiliated for all three years and computed their income-tax liability on a consolidated basis. The petitioners have not questioned this action, and we must accept it as correct. The Rogers Brown Transportation Company was dissolved before the institution of this proceeding before the Board, and it is not a party petitioner. The amount of the deficiency determined against it for 1924 has been paid.

The deficiency notice referred to in our findings of fact is sufficient to give us jurisdiction as to the Crocker First National Bank of San Francisco.

The deficiency notice, which is the basis for the petition in this proceeding, is not addressed to the First Federal Trust Company and the East Waterway Dock & Warehouse Company, and does not assert any deficiencies in tax or other liability against them. On the contrary in such deficiency notice it is indicated that the respondent found that those companies had net losses and it is stated that the overassessment of the First Federal Trust Company for the year 1924 would be made the subject of a separate communication. In this situation we must hold that the proceeding, in so far as it

relates to the First Federal Trust Company and the East Waterway Dock & Warehouse Company, should be dismissed for lack of jurisdiction.

This holding is not contrary to that in *Furniture Exhibition Building Co. et al.*, 24 B. T. A. 1279, and that in *American Auto Trimming Co.* v. *Lucas*, 37 Fed. (2d) 801. In those cases it did not clearly appear that the respondent was asserting in the deficiency letters only deficiencies against the parent corporations, to the exclusion of the subsidiaries, whereas in the instant proceeding it clearly appears that the deficiency letter purports to assert only deficiencies against the Crocker First National Bank, and does not purport to assert deficiencies against the other companies.

Those cases are also distinguishable in that they involved affiliated companies, whereas in the instant proceeding the Crocker First National Bank of San Francisco, which received the deficiency notice, was not affiliated with the First Federal Trust Company and the East Waterway Dock & Warehouse Company in the years 1924 and 1925. The Crocker First National Bank of San Francisco did not come into existence until January 1, 1926.

We now turn to the determination of the liability of the Crocker First National Bank of San Francisco. It is necessary in this regard to determine the tax liability of the First National Bank of San Francisco for the years 1924 and 1925, and incidentally to refer to the other companies affiliated with that company.

In this case the respondent, in determining the tax liabilities of the four companies for 1923, found that although there was an operating loss there was no net loss to be carried forward against income for the following years under the provisions of section 204 of the Revenue Act of 1921 and section 206 of the Revenue Act of 1924, due to the fact that two of the corporations in the consolidated group had tax-exempt income in an amount in excess of the operating loss of the group.

The petitioner contends that this action of the respondent was erroneous, for the reason that in determining the operating loss the respondent disallowed a deduction of an amount of $400,000 representing the decline in value of stocks held by the First National Bank; that tax-exempt income may not be used to offset operating losses; and that in any event the tax-exempt income of one member of an affiliated group may not offset and wipe out the net loss of another member so as to prevent *its* net loss from being carried forward and deducted from its income for a succeeding year. We will take up these contentions in the order in which they have just been stated.

The first contention of the petitioner is without merit. The only evidence of the worthlessness of the stocks in question is that the

Comptroller of Currency directed the bank to write down the value of the stocks and that, pursuant to such instructions, they were written down on the books. We have repeatedly held that this is not sufficient evidence to establish the worthlessness or partial worthlessness of stocks. *Prescott State Bank*, 11 B. T. A. 147, and *West Lafayette Bank*, 12 B. T. A. 1356. Furthermore, mere decline in the value of stock is not allowable as a deductible loss. *Harry C. Howard*, 20 B. T. A. 207.

The second contention of the petitioner is that the net loss of a taxpayer can not be offset by tax-exempt income, since this in effect results in indirectly levying a tax on such income. Section 204 (a) of the Revenue Act of 1921 provides as follows:

That as used in this section the term "net loss" means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business); and when so resulting means the excess of the deductions allowed by section 214 or 234, as the case may be, over the sum of the following: (1) the gross income of the taxpayer for the taxable year, (2) the amount by which the interest received free from taxation under this title exceeds so much of the interest paid or accrued within the taxable year on indebtedness as is not permitted to be deducted by paragraph (2) of subdivision (a) of section 214 or by paragraph (2) of subdivision (a) of section 234, * * *

Section 206 (f) of the Revenue Act of 1924 provides as follows:

If for the taxable year 1923 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1921, the amount of such net loss shall be allowed as a deduction in computing net income for the two succeeding taxable years to the same extent and in the same manner as a net loss sustained for one taxable year is, under this Act, allowed as a deduction for the two succeeding taxable years.

It will thus be seen that, by the plain terms of the act, tax-exempt income is to be added to the gross income in determining a net loss. *Warren Steam Pump Co.*, 23 B. T. A. 585; *Orr & Sembower*, 20 B. T. A. 605; *Samuel G. Adams*, 19 B. T. A. 781; and *H. J. Schlesinger*, 5 B. T. A. 943. The petitioner contends that this section is discriminatory and imposes a greater tax on those taxpayers who have tax-exempt income than on those who do not.

We do not agree with this contention. Congress has the power, in granting taxpayers the privilege of reducing the net income of one year by a net loss of another, to provide how such net loss shall be determined. The respondent did not err in holding that the tax-exempt income should be included in gross income in determining whether a net loss was sustained. *General Securities Corp.*, 23 B. T. A. 130.

The petitioner contends further that in any event the tax-exempt income of one member of an affiliated group may not offset and wipe out the net loss of another member so as to prevent its net loss from being carried forward and deducted from its income for a succeeding year. The consolidated return for the year 1923 showed a net operating loss of $346,344.53, adjusted by the respondent to $147,903.06, all the companies affiliated having net operating losses except the First Federal Trust Company. The tax-exempt income of the First National Bank of San Francisco and the First Federal Trust Company for that year exceeded the amount of the consolidated net loss as adjusted by the respondent. However, it is claimed by the petitioner that the net operating loss of the First National Bank of San Francisco exceeded its own tax-exempt income; that it is entitled to deduct such excess from its net income in the succeeding year; and that such excess should not be offset by the tax-exempt income of the First Federal Trust Company. This claim is based upon the assumption that the respondent erred in disallowing the deduction of $400,000 representing alleged shrinkage in value of stock, which disallowance we have hereinabove approved. There is no evidence from which we can determine whether or not the net operating loss of the First National Bank of San Francisco for the year 1923 as adjusted by the Commissioner was in excess of its own tax-exempt income for that year. It only appears from the record that the disallowance of the deduction of $400,000 resulted in the reduction of the consolidated net operating loss from $346,344.53 to $147,903.06. Assuming that the net loss of the First National Bank of San Francisco was in excess of its own tax-exempt income, nevertheless we are of the opinion that the contention of the petitioner can not be sustained.

The petitioner cites our decision in *Struthers-Ziegler Cooperage Co.*, 18 B. T. A. 537, in which we held that a corporation does not lose its indentity as a " taxpayer " when it becomes a member of an affiliated group. It contends that, since the net loss provision refers to a " taxpayer," the net income or net loss of each member should be computed separately, and that if one member has a net loss it should be carried forward against its income for the succeeding year or years and should not be eliminated by reason of the fact that another member had income in an amount in excess of such loss.

Upon this point the court in *Swift & Co.* v. *United States*, 38 Fed. (2d) 365, decided by the Court of Claims, states as follows:

* * * The consolidated group, as such, is not a taxpayer but a tax computing unit, and the corporations which are members of the affiliated group for the year, or became members during the year, lose their separate identity while so affiliated only for the purpose of computation of the tax upon one income and one invested capital which is composed of the income and invested capital of such corporations combined, but, when it comes to the assessment

and collection of the tax so computed, it is assessed against and collected from the several corporations constituting the affiliated group, in proportion to the net income properly assignable to each, unless there is an agreement among them as to a different apportionment. * * *

* * * * * * *

* * * In the enactment of section 240, Congress was simply laying down the principle that where a group of companies constituted a single business unit, the net income, determined in accordance with the general principles of law should be *combined*, losses being offset against gains, and the *rate of tax* should be determined by the relation between such combined net income and the invested capital of the group as a whole, each corporation being at all times separately recognized and individually liable for its proportion of the tax according to the net income properly assignable to it.

* * * * * * *

It might be argued that the position we have taken herein as to the separateness of each member of the affiliated group as a taxpayer is not consistent when we refuse to give to one member of the affiliated group, who sustained a net loss in 1919, the benefit of this net loss as a deduction from 1918 income when the affiliated group in 1919, when combined, had a consolidated net income. The answer to this is that in such a case, for the purpose of computation, *section 240 is a limitation of section 204 and that, in the computation under section 240, losses of one company must be offset against the income of the other companies before it can be determined whether there is a net loss of any company* in 1919 which may be applied against its income for 1918. Obviously, if this were not done, the net loss which had been used to offset the income of the other companies in the consolidated group *would be allowed again to reduce the income of the company which sustained the loss when applying it to the income of the prior year, and we think Congress did not intend a double deduction of this character.* [Italics supplied.]

In that case there was a consolidated gross loss in 1919 of $10,000 which was reduced to $8,000 by the net income of $2,000 of one of the members of the group. The court held that, since the net losses of the members sustaining such net losses may be said to have contributed to the extinguishment of the net income of one of the members, the consolidated net loss should be apportioned in the ratio of losses suffered. Thus far the facts in that case are similar to the facts in this proceeding. The only difference between that case and the instant proceeding is that in that case none of the members had any tax-exempt income to take into account in computing the consolidated net loss deductible in a suceeding year, whereas in the instant proceeding the net operating loss was offset by tax-exempt income of two of the members. This difference is immaterial. *Kaiwiki Sugar Co., Ltd.*, 21 B. T. A. 997. See computation in that proceeding at page 998 as approved at page 1000. In every case the net loss to be carried forward must be " an actual and true loss." *Warren Steam Pump Co., supra.*

In *Warren Steam Pump Co.* the same question involved herein was considered, the petitioner therein contending that the provisions of section 206 (a) of the Revenue Act of 1926 were unconstitutional and

also citing *National Life Insurance Co.* v. *United States*, 277 U. S. 508, as controlling. The Board, upon authority of *Denman* v. *Slayton*, 282 U. S. 514, and *First National Bank of Chicago* v. *United States*, 283 U. S. 142, held such provisions constitutional and stated:

We see no reason why Congress in granting this particular boon may not limit it so *that the loss to be carried forward is an actual and true loss*, and not an artificial one which arises from the exclusion of certain nontaxable income. [Italics supplied.]

The status of affiliated corporations as a " tax-computing unit " is more clearly defined by the court in *Woolford Realty Co.* v. *Rose*, 53 Fed. (2d) 821, as follows:

* * * Because the income on which the tax shall be paid in the taxable year, though made up of the results of the business of each affiliate, is not the income of each individual taxpayer, but the income of the unit for that year, the Commissioner was right in allowing against the aggregate gross income of the business for that year the aggregate deductions applicable to that year. This treatment gives full effect to the purpose of the statute to allow affiliates to transact their business as freely as though they were one corporation acting through departments, with the assurance to the Government and the taxpayer alike that the taxes payable as the result of the business done by the taxable unit in that year will, without reference to the bookkeeping of the individual corporations, be paid upon the whole business done by the unit, taking into consideration all of the earnings and all of the deductions of the branches of the business, not separately but in the aggregate, just as though in that year there was no separate corporate structure, but one corporation maintaining many departments.

The above case was affirmed by the Supreme Court in *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, in which the Supreme Court also cites *Swift & Co.* v. *United States*, *supra*, with approval.

The Board, in the case of *Samuel G. Adams*, *supra*, determined the method to be used in the treatment of nontaxable income of the wife in the determination of the " net loss " of the husband to be deducted in the succeeding year as follows:

* * * In other words, the two [husband and wife] are treated as a unit for the purpose of determining taxable net income and we think a different course should not be pursued when we come to arrive at a " net loss " as applicable to the year for which the joint return was filed. To determine the " net loss " of an individual for 1921, it is necessary to take into consideration not only the items of gross income specified in the statute, but also nontaxable income received by such individual. And the same method would obviously apply where a " net loss " is being determined on the basis of a joint return for one year which would be allowable as a deduction in computing net income on a joint return for the subsequent year. * * * Certainly, when it is considered that an election to file joint or separate returns gives to a husband and wife the privilege of adopting the method for a given year which is most advantageous to them, they should not be allowed to use such joint return for the purpose of fixing taxable net income, which may be advantageous to them, and then be allowed to disregard the joint return when it would be less

advantageous to determine the "net loss" on the basis of such joint return. We find no statutory provision that would require such a result. On the contrary, we are of the opinion that when these petitioners elected to file joint returns they thereby elected to have all determinations of income and losses (for tax purposes) determined on the basis of these joint returns.

If affiliated companies avail themselves of the privilege of filing a consolidated return, such group becomes a tax-computing unit and the members lose their separate identity for the purpose of the computation of the tax. Since such group becomes a tax-computing unit upon filing a consolidated return, it seems to follow that they remain such tax-computing unit so long as consolidated returns are filed, whether the incomes involved are taxable or tax exempt. *Kaiwiki Sugar Co., Ltd., supra.* Cf. *Samuel G. Adams, supra.*

Therefore, since there was no actual and true consolidated net loss in the year 1923, the net loss of a member of the affiliated group for the year 1923, offset by tax-exempt income of its own or other members of the group, can not be carried forward and deducted from its net income in the succeeding year.

Reviewed by the Board.

> *The proceeding will be dismissed as to the petitioners, First Federal Trust Company and East Waterway Dock & Warehouse Company. Judgment will be entered for the respondent as to the Crocker First National Bank of San Francisco.*

VAN FOSSAN dissents.

---

BLACK, dissenting: The petitioner in this case makes the following contention: "That the tax exempt income of one member of an affiliated group may not offset and wipe out the net loss of another member so as to prevent its net loss from being carried forward and deducted from its income for a succeeding year." I think this contention of petitioner is correct, and that it is error for the Board to hold the contrary.

An examination of the findings of fact will show that the respondent, in determining whether petitioner had a "net loss" for 1923 which it is entitled to carry forward and use as a deduction in 1924, does it on a consolidated basis, which I think is fundamentally wrong. In my judgment, on the authority of *Woolford Realty Co. v. Rose*, 286 U. S. 319, recently decided by the Supreme Court, there is no such thing as a "consolidated net loss" under the 1924 and prior Acts. The proper way, in my judgment, is to determine the net income, or the net loss, as the case may be, of each constituent corporation. If one corporation has a net loss and such net loss is used

to wipe out the taxable net income of an affiliate, then the amount of net loss which it may carry forward into the ensuing year is correspondingly reduced.

This rule is necessary to prevent the net loss being used for deduction purposes twice, a thing Congress evidently did not intend. *Swift & Co.* v. *United States*, 38 Fed. (2d) 365. On that point I have no disagreement with the majority opinion, but where I do disagree is as to respondent's use of tax-exempt interest in the instant case, which belonged to petitioner's affiliate, the First Federal Trust Company.

I think I can better illustrate the point I am endeavoring to stress by the use of a concrete illustration. Take corporations "A" and "B," which are affiliated in 1923. Let us suppose corporation "A" has an operating loss of $50,000 in 1923 after the use of all items of ordinary income and deductions. Corporation "B" has a net income of $25,000 by the use of all items of ordinary income and deductions. I will admit that corporation "A," in determining what "net loss" it shall carry forward and use as a deduction from its 1924 income, will have to reduce its "net loss" by the amount that was used in wiping out the ordinary net income of its affiliate, "B." In such a case corporation "A" would be entitled to carry forward into 1924 a "net loss" of only $25,000, because $25,000 of its net loss had been used to wipe out that much taxable income of corporation "B." Suppose corporation "B" in addition to its ordinary net income of $25,000, has tax-exempt income of $25,000. According to the contention made by respondent, and approved by the majority opinion, this $25,000 tax-exempt income of "B" should also be used to reduce the statutory "net loss" of "A" and "A" would not be entitled to carry forward any statutory "net loss" into 1924. I say this is wrong. Corporation "A" should have its statutory "net loss" reduced only by its *own* tax-exempt interest and nontaxable dividends plus the amount of its net loss which is used to wipe out the net income of its affiliate corporation, "B."

In the instant case the First Federal Trust Company had a net income (ordinary income) for 1923 of $34,457.72, and to the extent that petitioner's net loss for 1923 was used to wipe out this $34,457.72, it should be reduced in carrying forward into 1924, under the doctrine of *Swift & Co.*, *supra*. But the respondent's use of $249,315.54, tax-exempt interest (not tax-exempt interest belonging to petitioner, but tax-exempt interest belonging to the First Federal Trust Company) in reducing petitioner's "net loss" for 1923 was error, in my judgment.

The majority opinion cites, as authority for approving respondent's action in this respect, *Samuel G. Adams*, 19 B. T. A. 781, but there is

a substantial difference in the two situations. In the *Samuel G. Adams* case the husband combined all the income of himself and wife on one single joint return and there was only one taxpayer, to wit, Samuel G. Adams. But the situation is entirely different with affiliated corporations which file a consolidated return. Each corporation remains a separate taxpayer and its statutory net loss which it is entitled to carry forward to the next taxable year should be computed separately. The net loss of affiliated corporations may not be used as a consolidated net loss of the affiliated group. *Delaware & Hudson Co.*, 26 B. T. A. 520.

The majority opinion also cites as authority for its holding on this point, *Kaiwiki Sugar Co., Ltd.*, 21 B. T. A. 997. Admittedly this case does hold that the nontaxable dividends received by one corporation, having no net loss for the taxable year, may be used to reduce the statutory net loss of an affiliated corporation, and in that respect would be a valid precedent for the majority opinion in the instant case. But in view of the recent decision of the Supreme Court in *Woolford Realty Co.* v. *Rose, supra*, I think our decision on the particular point herein discussed as decided in *Kaiwiki Sugar Co., Ltd., supra*, was wrong and should not be followed.

TRAMMELL agrees with this dissent.