WILSON FURS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SELBERT, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57058, 57059. Promulgated November 14, 1933.

*William Gellin, Esq.*, for the petitioners.
*J. M. Leinenkugel, Esq.*, for the respondent.

OPINION.

McMahon : The petitioner, Wilson Furs, Inc., contends that the account designated " Reserve for Forfeited Deposits " is truly a liability account, that the cancellation of sales and forfeiture of deposits were made without the consent of the customer, and that should the customer thereafter demand the refund of the deposit, the petitioner would be obliged to (1) refund the deposit, (2) give credit for same on sale of another garment, or (3) issue a credit slip to be applied against a future sale; and that therefore the sum of $3,000 should be treated as a liability and not as income.

The auditor of petitioner testified that for the year ended December 31, 1926, the books of account showed that there was credited to " Income Forfeited Deposits " the amount of $846.85; that this was treated as income and was included in gross income reported by the petitioner in its income tax return for the year 1927; that there appears on the petitioner's books of account an account called " Credit Checks " in the sum of $2,546.10 as of January 1, 1927 [which does not appear as a liability on its income tax balance sheet as of December 31, 1926, notwithstanding his testimony to the contrary]; that the credit item of $3,343 shown on the income tax balance sheet as of December 31, 1927, as " Credit Checks & Reserve Forfeited Deposits " is reflected in its books of account, the $343 appearing as credit checks and the $3,000 appearing as reserve for forfeited deposits; and that the sum of $3,000 was treated as reserve for forfeited deposits to set up the estimate of possible claims for forfeited deposits. The auditor also testified that " this business does about $200,000 worth of advertising a year, and it could not afford lawsuits so that it does return, as a matter of practice, the deposits when demanded by customers rather than go to court "; and, again, that " In the year 1927, they paid $200,204.75 for advertising; they did a business of $1,429,947.46, so that this business can not afford to have lawsuits for return of deposits "; and that the difference between the balance of January 1 and the balance of December 31 in credit checks represents " payments actually made to customers by checks or credits given on new sales." The latter statement as to payments is ambiguous, particularly in view of the testimony of the auditor that " credit checks " is petitioner's designation for " credit slips."

It is argued by the petitioner that, although the account may have been designated as a reserve, it is a true liability account; that the charge of this reserve was properly deducted by the petitioner; and that the $3,000 should be treated as a liability and not as income.

In view of the notation " Deposits are refunded in 5 days if the customer changes her mind " appearing on the sales slips; the testimony of the auditor that, rather than go to court, deposits were refunded; and the unsatisfactory and indefinite testimony as to actual cash refunds of forfeited deposits, it seems to us reasonable to conclude that the petitioner considered a sale closed and final after the lapse of five days; that thereafter it did not recognize or admit liability for the return of such deposits; and that it did not return or refund such deposits unless court proceedings impended. Furthermore, the journal entry discloses that the reserve was set up to meet *possible claims* for forfeited deposits.

The Board has considered the question of the deduction of reserves in a number of cases. In *William J. Ostheimer*, 1 B.T.A. 18, the Board stated:

While it might have been sound business practice on the part of the taxpayer to set up a reserve out of his income to meet a future liability, such a reserve is not deductible in determining net income. The revenue laws prior to the 1921 Act have never recognized reserves as being deductible from gross income in determining net income except in the case of insurance companies. In the Revenue Act of 1921 specific provision was made for the deduction of reserves for bad debts. If reserves had been deductible under the general provisions of the Act it would not have been necessary to make specific provision for the deduction of particular reserves in the case of insurance companies or for bad debts. The statute specifies what deductions are allowable and, except in the case of insurance companies, no provision is made in the 1918 Act for the deduction of a reserve as such. Items of expense must actually have been paid or liability therefor incurred in order to be deductible under that Act.

See also *Hanff-Metzger, Inc.*, 4 B.T.A. 1214; *Amigo Coal Co.*, 8 B.T.A. 598; *Commercial Liquidation Co.*, 16 B.T.A. 559, and cases cited; and *Atlas Mixed Mortar Co.*, 23 B.T.A. 245, and cases cited. Cf. *Union Security Co.*, 16 B.T.A. 1412.

The action of the respondent in disallowing the deduction of the amount of the reserve and in adding it to net income is therefore approved.

In 1928 Wilson Furs, Inc., and Selbert, Ltd., had net incomes of $24,175.85 and $9,508.72, respectively, and Ford Furs, Inc., had a loss of $6,701.62. In computing consolidated net income the respondent disregarded the 1926 unabsorbed statutory net loss of Selbert, Ltd., of $31,954.53, and computed consolidated net income by deducting the loss of Ford Furs, Inc., of $6,701.62 from the combined income of the petitioners of $33,684.57. From such net consolidated income of $26,982.95, he deducted a portion of the unabsorbed statu-

tory net loss of Selbert, Ltd., of 1926 in the amount of $7,616.94, computed in the manner heretofore shown by our findings. The consolidated net income as thus computed by the respondent is $19,336.01.

The petitioner contends that the 1926 unabsorbed statutory net loss of the petitioner, Selbert, Ltd., should be allowed as a deduction in 1928 against the income of Selbert, Ltd., to the extent of $9,508.72, which would offset its income of $9,508.72 for 1928; and that such unabsorbed statutory net loss of 1926 should be deducted from the net income of Selbert, Ltd., in 1928 before computation of consolidated net income for 1928.

The applicable provisions of the Revenue Act of 1928 are set forth in the margin.[1]

In 1926 there were only two members in the affiliated group, one, Selbert, Ltd., sustaining a net loss of $33,553.48, and the other, Wilson Furs, Inc., having a net income of $1,598.95, the result being a consolidated statutory net loss of $31,954.53. This amount represents the unabsorbed statutory net loss of Selbert, Ltd.

While a statutory net loss of a member of an affiliated group may not be carried forward to a succeeding year if such member does not have a net income in the succeeding year, we find no authority which holds that a consolidated net loss, representing the unabsorbed net loss of only one member of the affiliated group, may not be carried forward to a subsequent year to the extent of the net income in such subsequent year of the member which sustained such net loss. On the contrary, in *Beneficial Loan Society*, 26 B.T.A. 858 (affirmed in *Beneficial Loan Society* v. *Commissioner*, 65 Fed. (2d) 759, on authority of *Woolford Realty Co.* v. *Rose*, 286 U.S. 319; certiorari denied, October 23, 1933), the Board stated:

The statutory net loss provisions are to be applied separately to each member of an affiliated group. Where some members of the group, as here, have losses

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(i) *Net losses.*—The special deduction for net losses of prior years, to the extent provided in section 117.

SEC. 117. NET LOSSES.

(b) *Net loss as a deduction.*—If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called "second year"), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding year (hereinafter in this section called "third year"); the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

\* \* \* \* \* \* \*

(e) *Net loss for 1926 or 1927.*—If for the taxable year 1926 or 1927 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1926, the amount of such net loss shall be allowed as a deduction in computing net income for the two succeeding taxable years to the same extent and in the same manner as a net loss sustained for one taxable year is, under this Act, allowed as a deduction for the two succeeding taxable years.

and others have income in 1923, but the total loss exceeds the total income of the group, the losses are first used to absorb the income and the excess loss is distributed proportionately among the members having losses. The amount thus apportioned to each company having a loss is used to compute the statutory net loss of that company. *Swift & Co.* v. *United States*, 38 Fed. (2d) 365; *Kaiwiki Sugar Co.*, 21 B.T.A. 997. In the following year this statutory net loss may be used to offset any income which that particular company has for the year before being reduced by any losses of its affiliates. If there is an excess of loss it is carried over to the third year. See *Delaware & Hudson Co.*, 26 B.T.A. 520. Cf. *Woolford Realty Co.* v. *Rose*, 286 U.S. 319; *Planters Cotton Oil Co.* v. *Hopkins*, 285 U.S. 533.

To the same effect, see *Kaiwiki Sugar Co.* v. *Burnet*, 63 Fed. (2d) 822, affirming *Kaiwiki Sugar Co., Ltd.*, 21 B.T.A. 997; *Delaware & Hudson Co.* v. *Commissioner*, 65 Fed. (2d) 292; affirming *Delaware & Hudson Co.*, 26 B.T.A. 520; *Sweets Co. of America* v. *Commissioner*, 40 Fed. (2d) 436; *California Wharf & Warehouse Co.*, 28 B.T.A. 509; *Albert Leon & Son, Inc.*, 29 B.T.A. 251. Cf. *Crocker First Nat. Bank of San Francisco*, 26 B.T.A. 1078.

Since the unabsorbed net loss in 1926 of Selbert, Ltd., is the amount of $31,954.53, such amount may be carried forward by such petitioner to 1928 to the extent of its own net income for that year, or $9,508.72. The net income of Selbert, Ltd., in 1928 being entirely offset by its statutory net loss of 1926, the consolidated net income for 1928 is $17,474.23, which is arrived at by deducting the loss of Ford Furs, Inc., of $6,701.62 from the net income of Wilson Furs, Inc., of $24,175.85. Upon the authority of the foregoing cases the excess of such statutory net loss over such 1928 income may not be used in computing consolidated net income for 1928.

The respondent on brief states that his contention upon this issue is set forth in G.C.M. 8132, IX-1 C.B. 287, 292. We have examined this memorandum, but we cannot agree with the view therein presented that the portion of a consolidated net loss for a prior year properly attributable to a member of an affiliated group may be applied in a subsequent year against the "consolidated net income allocable" to such member, or in other words, that the net income of a member in a subsequent year must first be reduced proportionately by the loss of other members before deducting the prior year's net loss attributable to such member.

*Decision will be entered under Rule 50*