WORCESTER SALT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60271. Promulgated December 12, 1933.

*Laurence Graves, Esq.*, for the petitioner.
*J. M. Leinenkugel, Esq.*, for the respondent.

OPINION.

STERNHAGEN : The Commissioner, after examining the returns of the Worcester Salt Co., the Kerr-Remington Salt Co., and Alexander Kerr Bro. & Co. for 1928, determined that for the first five months, until June 1, a separate return was proper for the Worcester Salt Co., and that a consolidated return for the whole year should include the year's operations for the other two corporations and the last seven months of the Worcester Co. This is accepted by both parties as correct, and upon that basis respondent determined a deficiency of $8,808.58 for the earlier period and $4,988.75 for the consolidated return period. The only issue is the validity of the respondent's disallowance on the consolidated return of a deduction taken by Kerr-Remington Co. of $261,423.85 as a loss upon the sale by it in December 1928 of bonds of the Worcester Co.

The facts are all submitted in a written stipulation, as follows:

1. The petitioner, Worcester Salt Company, is a corporation organized under the laws of the State of New York in the year 1894 with principal place of business at 40 Worth Street, New York, New York, formerly at 71 Murray Street, New York, New York.

2. Kerr-Remington Salt Co., Inc., was the owner of all of the issued and outstanding capital stock of Alexander Kerr Bro. & Co., Inc. during the entire calendar year 1928. On June 1, 1928, the petitioner acquired the entire issued and outstanding capital stock of Kerr-Remington Salt Co., Inc., at a cost of $679,319.04 and continued to own said stock during the remainder of the calendar year 1928.

3. Kerr-Remington Salt Co., Inc., and Alexander Kerr Bro. & Co., Inc., were affiliated for the calendar year 1928 within the meaning of the provisions of section 142 of the Revenue Act of 1928 and Worcester Salt Company was affiliated with the aforesaid corporations for the period June 1, 1928, to December 31, 1928, within the meaning of said section. The respondent has correctly determined that the income tax liability of the petitioner for said period June 1, 1928, to December 31, 1928, should be computed upon the basis of a consolidated return including the net income of Kerr-Remington Salt Co., Inc., and Alexander Kerr Bro. & Co., Inc., for the entire year 1928 and of the petitioner for said period June 1, 1928, to December 31, 1928. The petitioner was not affiliated with any other corporation within the meaning of the provisions of section 142 of the Revenue Act of 1928 for the period January 1, 1928, to May 31, 1928. The respondent has correctly determined that the income tax liability of the petitioner for said period January 1, 1928, to May 31, 1928, should be computed upon the basis of a separate return.

4. On or after June 1, 1928, and after the petitioner had acquired the stock of Kerr-Remington Salt Co., Inc., as aforesaid, Kerr-Remington Salt Co., Inc., transferred to the petitioner all of its assets, subject to all its liabilities, in exchange for the issuance to said Kerr-Remington Salt Co., Inc., by the petitioner of its bonds of a face value of $680,000. In December, 1928, Kerr-Remington Salt Co., Inc., sold to a national bank $300,000 face value of said bonds of the petitioner for $300,000 cash.

5. The depreciated cost of the assets of Kerr-Remington Salt Co., Inc., less liabilities, transferred to the petitioner in exchange for said $680,000 face value of bonds was $1,274,434.02.

6. The petitioner's net taxable income for the period January 1, 1928, to May 31, 1928, was in the amount of $4,637.92 and its net taxable income for the period June 1, 1928, to December 31, 1928, was in the amount of $171,533.72.

Briefly, Kerr-Remington had net assets at a depreciated cost of $1,274,434.02. On June 1, 1928, Worcester bought all Kerr-Remington's outstanding shares for $679,319.04 cash, thus establishing a statutory affiliation, Revenue Act of 1928, section 142 (c). Thereupon Kerr-Remington transferred its net assets, the value of which is not shown, to Worcester and Worcester issued bonds of $680,000 to Kerr-Remington. Later in the same year Kerr-Remington sold $300,000 of these bonds at par to a national bank. From this the contention is made that Kerr-Remington sustained a loss measure at 30/68 of the difference between $1,274,434.02, taken as the cost of the bonds, and $680,000, their value when received.

The petitioner's primary argument takes this form: (1) The exchange of assets for bonds was a statutory reorganization, within section 112 (i) (1); (2) under section 112 (b) (4) no gain or loss was recognizable to Kerr-Remington at the time of the exchange; (3) under section 113 (a) (6) the depreciated cost of Kerr-Remington's assets, which would have been the basis for determining gain or loss if gain or loss were then recognized, was carried over as the basis upon which to determine gain or loss upon disposition of the bonds; and (4) that this is proportionately true as to the sale of part of the bonds. Petitioner also argues that such a loss is deductible even though Kerr-Remington was a member of an affiliated group.

The respondent, arguing also from the proposition that there was a statutory reorganization, invokes section 113 (a) (7) and contends that the issue of bonds by Worcester to Kerr-Remington was a transfer of property which retains the same basis upon disposition by the transferee Kerr-Remington as it would have had in the hands of the transferor Worcester, which basis he takes to be the $679,319.04 paid for the Kerr-Remington shares. He argues further that, since the corporations were affiliated, the exchange of assets and bonds was an intercompany transaction and thus the basis remained unchanged.

In our opinion, since at the time of the sale by Kerr-Remington of the Worcester bonds the two corporations had become affiliated within the affiliation provision of the statute, the question of tax liability is primarily governed by the affiliation aspect of the transaction so far as the corporations are concerned. The group, after the transfer of assets and issuance of bonds, was still in the same situation as before—that is, the group still owned the assets and merely held its own bonds. The exchange was an innocuous internal event. When the $300,000 of bonds were sold at par, this was the first time that the financial position of the group was altered, the

group becoming a debtor on its bonds to this extent to the holder. This is merely the position of a borrower, who, by giving his note, realizes neither gain nor loss. At that point, he is not affected by the doctrine of *United States* v. *Kirby Lumber Co.*, 284 U.S. 1, which attributes to him a taxable gain if and when he discharges the obligation of his outstanding note at less than he borrowed.

There is no more reason to recognize the loss when Kerr-Remington sold the bonds than there would be if Kerr-Remington had sold its assets to its affiliate for cash in the first place. Such an intragroup sale would undoubtedly involve no recognizable gain or loss.

Petitioner cites *Ohio Central Telephone Co.*, 28 B.T.A. 96. In that proceeding the petitioner, being affiliated with six other corporations, acquired from them upon the liquidation of their assets the shares and bonds of a third corporation, thus simultaneously destroying the first affiliation with the six and establishing the second affiliation with the third. The allocation of the assumed cost as between the bonds and several classes of stock of the third corporation was not shown. Thereafter the petitioner sold the bonds thus acquired to an outsider. The Commissioner determined a gain which the Board sustained. Whatever be the *ratio decidendi* of that decision, its complexity alone precludes it as a precedent for the present case. Here we have simply an original issuance, after the affiliation was established, of bonds by one affiliate to another, and the disposition of such bonds at par by the other within the period of affiliation. That the considerations affecting such facts entirely within the period of affiliation may be different from those which include transactions either before, after, or simultaneously with the formation or destruction of affiliation is well established. Cf. *Farmers Deposit Nat. Bank*, 5 B.T.A. 520; *Remington Rand, Inc.* v. *Commissioner*, 33 Fed. (2d) 77, certiorari denied, 280 U.S. 591; *Burnet* v. *Aluminum Goods Mfg. Co.*, 287 U.S. 544. Cf. Revenue Act of 1928, sec. 113 (a) (12). The difficulties inherent in *Ohio Central Telephone Co.*, *supra*, may not, therefore, control the more simple case which we have here.

It is unnecessary, since the affiliation is the dominant and controlling fact, to decide whether the acquisition by Worcester of the Kerr-Remington shares for cash, or the exchange of assets for bonds, constituted either separately or in conjunction a statutory reorganization; or whether the issuance by Worcester of its bonds was a transfer of property, within the meaning of the reorganization provisions; or whether the acquisition by Worcester of the shares and later the assets is to be treated as a purchase by it of the assets for cash.

530

Since the parties agreed at the hearing that if it is held, as it has been, that Kerr-Remington sustained no deductible loss by the sale of the $300,000 of bonds, the deficiency as determined is correct.

Reviewed by the Board.

*Judgment will be entered for the respondent.*