## NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52693. Promulgated April 17, 1934.

*C. L. Andrus, Esq.*, and *Hermon J. Wells, Esq.*, for the petitioner.
*James T. Haslam, Esq.*, for the respondent.

### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in income tax for 1926 of $57,885.15. The proceeding raises the question as to whether intercompany transactions should be excluded from income accounts of members of an affiliated group prior to computing the statutory net losses of the individual members and also excluded in computing the net income of the subsequent year prior to deducting the statutory net loss of the preceding year.

During the calendar years 1925 and 1926 the petitioner was the principal or parent corporation of a group of affiliated corporations which filed consolidated Federal income tax returns for those calendar years. The subsidiary companies filed for those years infor-

mation returns on Form 1122, containing a stipulation that the tax should be assessed against the petitioner.

The corporations that were included in the consolidated returns for the above years are as follows:

New York, Ontario & Western Railway Co.
Port Jervis, Monticello & Summitville Railroad Co.
Pecksport Connecting Railway Co.
Wharton Valley Railway Co.
Ontario, Carbondale & Scranton Railway Co.
Ellenville & Kingston Railroad Co.
Elk Hill Coal & Iron Co.
Anthracite Valley Water Co.
Scranton Coal Co.
Scranton Coal Co. is the owner of 100 percent of the Priceburg Water Co., a Pennsylvania corporation.

All of the aforesaid corporations were held by the respondent to be affiliated for the entire calendar years 1925 and 1926 and satisfied all the requirements of affiliation under the law.

In the consolidated return for 1925 no tax liability was reported and the respondent has found none.

The following intercompany transactions occurred between the various affiliated companies during the years 1925 and 1926.

(a) Property of the Ontario, Carbondale & Scranton Railway Co. was operated by the petitioner under lease for an agreed rental of $75,000 for each year, an amount equal to the interest on all of its outstanding bonds which were held by the petitioner. The payment of the rental and the receipt of the interest are recorded in the accounts of the petitioner and of the Ontario, Carbondale & Scranton Railway Co.

(b) The property of the Ellenville & Kingston Railroad Co. was operated by the petitioner under lease for an agreed rental of $26,000 for each year, an amount equal to the interest on all of its outstanding bonds which were held by the petitioner. The payment of the rental and the receipt of the interest was recorded in the accounts of the petitioner and of the Ellenville & Kingston Railroad Co.

(c) The property of the Port Jervis, Monticello & Summitville Railroad Co. was operated by the petitioner under lease for an agreed rental of $18,000 for each year, an amount equal to the interest on all of its outstanding bonds which were held by the petitioner. Payment of the rental and the receipt of the interest was recorded in the accounts of the petitioner and of the Port Jervis, Monticello & Summitville Railroad Co.

(d) The Scranton Coal Co. paid to the petitioner $193,500 in 1925, and $161,493.05 in 1926, as interest on its bonds held by the petitioner.

(e) The Scranton Coal Co. paid to the Elk Hill Coal & Iron Co. $70,788.83 in 1925, and $128,128.91 in 1926, as rent for the use of its properties.

(f) The Scranton Coal Co. paid to the Priceburg Water Co. $50 in each year for water. This amount represented profit to the Priceburg Water Co. in each year.

(g) The Scranton Coal Co. sold fuel to the petitioner for $60,-861.96 in 1925, and for $138,167.03 in 1926, which amounts included no profit to the Scranton Coal Co.

(h) The Elk Hill Coal & Iron Co. paid to the petitioner $55,625 in 1926 as interest on its bonds held by the petitioner.

(i) The Elk Hill Coal & Iron Co. paid to the Scranton Coal Co. $56,000 as interest on its bonds held by the Scranton Coal Co.

In computing the deficiency of $57,885.15 for the year 1926, the respondent included as income to the recipient members of the affiliated group and as deductions to the payor members all items representing transactions between the various members of the group. Based upon such a computation the respondent computed statutory net losses for certain members of the affiliated group for 1925, which he deducted from the income of the respective members for the year 1926 in the determination of the above named deficiency. The respondent states that in computing the consolidated net income for the year 1926 he erroneously disallowed a deduction of $600.

The parties have stipulated as follows:

(a) If all intercompany transactions whether or not resulting in any profit or loss to the separate corporation should be eliminated in computing the statutory net loss of each company for 1925, and all intercompany transactions should be eliminated in computing the separate income of each company for 1926 for the purpose of applying its 1925 loss against its 1926 income, the deficiency for the year 1926 is $30,068.38.

(b) If only intercompany profits and losses should be eliminated in computing the statutory net loss of each company for 1925, and only intercompany profits and losses should be eliminated in computing the separate income of each company for 1926 for the purpose of applying its 1925 loss against its 1926 income, the deficiency for the year 1926 is $8,531.75.

(c) If intercompany transactions should not be eliminated in computing the statutory net loss of each company for 1925 and intercompany transactions should not be eliminated in computing the separate income of each company for 1926 for the purpose of applying its 1925 loss against its 1926 income the deficiency for the year 1926 is $56,234.96.

(d) If intercompany transactions should not be eliminated in computing the statutory net loss of each company for 1925, but all intercompany transactions should be eliminated in computing the separate income of each company for 1926 for the purpose of applying its 1925 loss against its 1926 income, the deficiency for the year 1926 is $43,341.79.

(e) If intercompany transactions should not be eliminated in computing the statutory net loss of each company for 1925 and only intercompany profits and losses should be eliminated in computing the separate income of each

company for 1926 for the purpose of applying its 1925 loss against its 1926 income, the deficiency for the year 1926 is $24,689.24.

The portions of the Revenue Act of 1926 material to the determination of the issue presented are as follows:

SEC. 233. (a) In the case of a corporation subject to the tax imposed by section 230 the term "gross income" means the gross income as defined in sections 213 and 217 * * *.

SEC. 213. (a) The term "gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid * * *; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income * * *.

SEC. 206. (a) As used in this section the term "net loss" means the excess of the deductions allowed by section 214 or 234 over the gross income, with the following exceptions and limitations:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(4) The deduction provided for in paragraph (6) of subdivision (a) of section 234 of amounts received as dividends shall not be allowed;

(5) There shall be included in computing gross income the amount of interest received free from tax under this title, decreased by the amount of interest paid or accrued which is not allowed as a deduction * * *.

(b) If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year * * *.

SEC. 240. (a) Corporations which are affiliated * * * may, * * * under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. * * *

Regulations 69, prescribed by the respondent under this statutory authority, contain the following provisions:

ART. 631. Affiliated corporations.—Consolidated returns are based upon the principle of levying the tax according to the true net income of a single enterprise, even though the business is operated through more than one corporation. Where one corporation owns the capital stock of another corporation or other corporations, or where the stock of two or more corporations is owned by the same interests, a situation results which is closely analogous to that of a business maintaining one or more branch establishments. In the latter case, because of the direct ownership of the property, the net income of the branch forms a part of the net income of the entire organization.

ART. 635. Consolidated net income of affiliated corporations.—Subject to the provisions covering the determination of taxable net income of separate corporations, and subject further to the elimination of intercompany transactions (whether or not resulting in any profit or loss to the separate corporations), the consolidated taxable net income shall be the combined net income of the several corporations consolidated. * * *

This provision concerning intercompany transactions has been carried through the respondent's regulations without change since 1921

(Regulations 65, art. 636; Regulations 62, art. 636) and, except for the matter in parentheses, was included in regulations promulgated under the Revenue Act of 1918 (Regulations 45, art. 637).

It has been judicially determined that an affiliated corporation remains a taxpayer, the affiliated group being really a tax-computing unit. *Woolford Realty Co.* v. *Rose*, 286 U.S. 319; *Swift & Co.* v. *United States* (Ct. Cls.), 38 Fed. (2d) 365; *Sweets Co. of America* v. *Commissioner*, 40 Fed. (2d) 436; *Commissioner* v. *Ben Ginsburg Co.*, 54 Fed. (2d) 238; *Delaware & Hudson Co.* v. *Commissioner*, 65 Fed. (2d) 292.

A question closely analogous to the one here presented was decided by the Court of Claims in *Swift & Co.* v. *United States, supra*. That case arose under the net loss provisions of the Revenue Act of 1921, section 204 (b). The plaintiff was the parent company in a group of some 60 affiliated corporations. There had been certain changes in the membership of the group during the years involved and the major questions presented were whether the affiliated corporations were entitled to the benefit of the net loss carry-over provisions regardless of such changes and, if so, to what extent. In the course of its opinion the court said:

> * * * It is contended, on behalf of the defendant, that the general use of the rule laid down in the regulation referred to would give large opportunity for evasion of taxes, but if the rule be applied in the manner that we have hereinafter set forth, *it will be observed that all intercompany transactions are eliminated* * * * and that consequently no opportunity for evasion is afforded. [Emphasis supplied.]

The court then set forth its method of applying the provisions of the statute and regulations and added:

> The results, as shown above, are of course determined on a consolidated basis; that is, *after the elimination of intercompany transactions pertaining to the various members of the groups.* [Emphasis supplied.]

In *Post & Sheldon Corp.*, 28 B.T.A. 26, we held that in computing consolidated net income for 1928 of affiliated corporations having prior net losses, intercompany transactions which in any way affect the total net income or the separate net income or apportioned tax of any member must be eliminated. In that case we were concerned only with the elimination of intercompany transactions for the year 1928. The two affiliated corporations had sustained net losses for the year 1926, which they desired to carry forward into the year 1928. The respondent had refused to eliminate the intercompany transactions and upon the basis of such refusal had determined a deficiency.

We are of the opinion that the logical application of the respondent's regulations to the facts involved in this proceeding requires the elimination of all intercompany transactions for both of the years

1925 and 1926. The theory of a consolidated return is the taxation of a group of corporations as a single enterprise. Ordinarily inter-company transactions must be eliminated in the determination of the consolidated net income. Such elimination does not affect the taxable net income for a single year. It is only when net losses are to be brought forward that the failure to eliminate intercompany transactions may affect the tax. That is the situation here. The fact that the tax liability of the petitioner for the year 1926 is lessened by the elimination of intercompany transactions is no reason for not applying the rule laid down by the Commissioner's regulations.

*Judgment will be entered for the respondent of a deficiency for 1926 of $30,068.38.*