PENNSYLVANIA INDEMNITY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71992. Promulgated April 17, 1934.

*Calvin H. Rankin, Esq.*, and *Frederick E. S. Morrison, Esq.*, for the petitioner.

*Percy S. Crewe, Esq.*, for the respondent.

#### OPINION.

SMITH: This is a proceeding for the redetermination of a deficiency in income tax for 1930 of $8,636.36. The petition alleges that the respondent erred in the determination of the deficiency (1) in the denial of the petitioner's right to file a consolidated return with its wholly owned subsidiary, the Pennsylvania Indemnity Corporation, and the latter's wholly owned subsidiary, the Pennslyvania Indemnity Fire Corporation, and (2) in disallowing the deduction of an alleged loss of $247,637.29 upon the sale of securities in the year 1930 upon the ground that the loss was incurred in a transaction not entered into for profit.

The facts with respect to the first issue are that the petitioner is a Pennsylvania corporation organized " for the purpose of transacting a general insurance agency and brokerage business and for the trans-

action of such other business as may be incidental thereto." During the year 1930 it owned all of the capital stock of the Pennsylvania Indemnity Corporation, a Pennsylvania corporation organized for the purpose of insuring against losses resulting from casualties, which in turn owned all of the capital stock of the Pennsylvania Indemnity Fire Corporation, a Pennsylvania corporation organized for the purpose of insuring against losses or damage of property by fire, explosion, transportation, collision, larceny, theft, etc. The petitioner filed a consolidated return with the two above named insurance companies for the calendar year 1930. The respondent has held that the petitioner may not file a consolidated return with the two insurance companies for 1930 by reason of section 141 (e) of the Revenue Act of 1928, which specifically provides: "An insurance company subject to the tax imposed by section 201 or 204 shall not be included in the same consolidated return with a corporation subject to the tax imposed by section 13."

It is agreed that the two insurance companies above referred to are subject to the tax imposed by section 204 and that the petitioner is subject to the tax imposed by section 13. In its petition the petitioner alleges that section 141 (e) of the Revenue Act of 1928 is unconstitutional. It has, however, made no argument in support of this contention and we find no support therefor. The petitioner's contention upon this point is not sustained.

The facts relating to the second contention are that the petitioner's subsidiaries had investments in stocks and bonds which had greatly depreciated in value. On November 20, 1930, the petitioner's board of directors adopted a resolution which reads as follows:

RESOLVED, That the Officers are hereby authorized to purchase from the Pennsylvania Indemnity Corporation and/or Pennsylvania Indemnity Fire Corporation such securities as they deem advisable, at a figure up to the book value of said securities as shown on the books of the Pennsylvania Indemnity Corporation and/or Pennsylvania Indemnity Fire Corporation.

Pursuant to such resolution the petitioner acquired securities from its subsidiaries at a cost of $666,967.37, which amount represented the cost of the securities to the subsidiaries but which securities at the time of purchase by petitioner had a fair market value of $420,051. These securities were sold by the petitioner through brokers at an amount to net it $419,330.08. Some of the securities were sold on the same day acquired from its subsidiaries and some a few days later. In its income tax return for 1930 petitioner deducted as a loss upon the sale of these securities the amount of $247,637.29, which deduction was disallowed by the respondent in the determination of the deficiency for the reason that " the Bureau holds that the loss on the sale of securities in the amount of $247,637.29 was not a transaction

entered into for profit and therefore has disallowed a loss of $247,-637.29 claimed on the return."

Section 23 (f) of the Revenue Act of 1928 provides that a corporate taxpayer may deduct from gross income " losses sustained during the taxable year and not compensated for by insurance or otherwise." Section 113 of the same act provides that the basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property.

We are of the opinion that the reason given by the respondent for disallowing the deduction of the loss, namely, that it was not incurred in a " transaction entered into for profit," is not in itself a sufficient ground for disallowing the deduction of the loss. The statute permits the deduction of losses from sales of property by a corporation even though the property was not acquired in a transaction entered into for profit. We are of the opinion, however, that the statute which permits a corporation to deduct from its gross income losses sustained upon the sales of property contemplates normal business transactions. Where a corporation for one reason or another purchases property at an amount in excess of the fair market value or in excess of the market price the transaction is not a normal business transaction.

In *Donald McDonald, Jr., Administrator*, 28 B.T.A. 64, we had before us the case of a taxpayer who acquired stock from his daughter-in-law at a price in excess of the fair market value thereof. The taxpayer paid a high price for the stock in order to help his daughter-in-law out of financial difficulties. In his income tax return the taxpayer claimed the right to deduct from gross income the difference between the price which he had paid the daughter-in-law for the stock and the price at which he sold it. We sustained the Commissioner in disallowing so much of the claimed loss as represented the difference between the selling price and the fair market value of the stock at the time it was acquired. In the course of our opinion we stated:

\* \* \* we think that they [the legislators] did not intend to allow a deduction for that part of the loss which resulted in this case from paying more than a fair price for the stock. The excess cost was paid for personal reasons, would not have been paid otherwise, and can not be the basis of a loss.

We think that the same reasoning is applicable in the proceeding at bar. The petitioner paid for the securities acquired from its subsidiaries an amount in excess of their fair market value for the purpose of bettering the financial condition of its subsidiaries. The substance of the transaction was a transfer by the petitioner to the subsidiaries of the excess of the price paid over the market value.

That amount did not represent a part of the cost of the securities. We are of opinion that the only amount of loss which the petitioner is entitled to deduct from gross income is the difference between the fair market value of the securities at the date acquired and the price realized for them on their sale. Cf. *Rubay Co.*, 9 B.T.A. 133.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

McMAHON, concurring: While I concur in the result, I cannot agree with the grounds therefor stated in the majority opinion.

The petitioner was the selling agent of its two wholly owned subsidiaries and this constituted its sole business. It acquired from them certain securities, having a market value of $420,051, for the sum of $666,967.37, which amount represented the cost thereof to them.

Situations may arise which would induce a purchaser to pay more than the market price to acquire property. Such a purchase may be and often is, as a matter of common knowledge, a normal transaction. Where the statute provides that "cost" shall be the basis for the computation of loss or gain, it means cost, whether the cost happens to be above or below the market value, provided an actual purchase was intended.

While the respondent disallowed the claimed loss upon the ground that it was not incurred in a "transaction entered into for profit", and while this is not a ground for disallowing the deduction of a loss by a corporate taxpayer, nevertheless the burden was upon the petitioner to show that it was entitled to the deduction. No explanation of the circumstances surrounding the alleged purchase of the securities from its subsidiaries was advanced by the petitioner and no reason was given for the payment of substantially more than the market price, except that counsel for the petitioner upon oral argument stated as follows:

It is quite true that the petitioner did not need to do that. [Pay book value instead of market value.] It did not need to sustain that loss, but it had to realize that it was in an insurance business as a whole, taking the three companies as one business entity, or one business group. It was in the insurance business and they had to protect policyholders.

Now, obviously the petitioner, by keeping these insurance companies in a healthy condition would obviously be able to sell more insurance. Or, rather, it would not sell less insurance because the insurance companies could show that they were sound.

As pointed out, not only were the subsidiaries wholly owned by the petitioner, but it was also their agent and this constituted its sole business. These facts, viewed in the light of the statement of counsel,

support the inference that the petitioner not only intended to protect its investment in its subsidiaries, but also its own business. Obviously, unless its subsidiaries could show that "they were sound", the petitioner would not be able to sell their policies of insurance, and by putting its subsidiaries in a sound financial position it enabled them to continue in business and also enabled itself to continue as agent and to sell at least as much insurance as it had theretofore sold. This was not a transaction comparable to a transaction between members of a family; it constituted a business transaction and must be viewed in that light. In reference to a somewhat analogous situation in *B. Estes Vaughan*, 17 B.T.A. 620, the Board stated as follows:

There appears to have been no legal obligation upon petitioner to make this payment, but the practical situation was compelling. Petitioner was president, director and a substantial stockholder in four banks. The defalcations had taken place while he was active manager of the bank. If the impaired capital had not been made whole on the date the defalcation was discovered, the bank would have been compelled to close its doors. The effect upon the reputation of the petitioner as a banker, upon the other banks of which he was president, and upon his investments in those banks, might have proven disastrous. It is urged that a payment under such circumstances is such a loss as is deductible. The Commissioner urges that it was made to protect the investment of petitioner; that it must be treated as additional cost of that investment; and that until the stock is disposed of it can not be said that petitioner has sustained a loss. We believe this to be the better view. Petitioner might have taken his loss by permitting the bank to be liquidated. In that case he would have been permitted his deduction. He chose instead to put more funds into the venture, giving it new life. * * * While these funds left the hands of the petitioner, they went to enrich a corporation in which he was a substantial stockholder.

In other words, the amount paid in by that taxpayer was held to be a capital contribution and hence a part of the cost of his stock. The cause of the impairment of the capital is immaterial, whether through defalcations as in the above situation or through decrease in market value of assets as in the instant proceeding. In this view the difference between the cost of the securities to petitioner's subsidiaries and the market value at the date of purchase of such securities, by the petitioner, constituted a capital contribution on the part of petitioner and therefore is not deductible as a loss. See *Washington State Bank*, 20 B.T.A. 33; and *W. R. Ranney*, 16 B.T.A. 1399; affirmed in *First Nat. Bank in Wichita* v. *Commissioner*, 46 Fed. (2d) 283.

---

STERNHAGEN, dissenting: It seems to me that the Board has artificially construed the plain facts. The petitioner bought the securities from another corporation, which the statute treats as separate and unaffiliated, for a contract price of $666,967.37, the amount of which was paid. Nothing was said about a gift or a capital contri-

bution. If the purchase price had been less, the selling corporation would have sustained a loss, deductible on its return. By the present decision, although the securities actually diminished in value and were disposed of at less than cost, neither corporation gets a deduction for the loss which was indubitably sustained. There is, in my opinion, nothing in the circumstances to compel such a result.

GOODRICH agrees with this dissent.