WALKER PRODUCTS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THREE RIVERS SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PITTSBURGH MELTING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CONTINENTAL LEGAL & PROTECTIVE ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALLEGHENY GARBAGE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 44856–44860, 48880. Promulgated May 4, 1934.

*H. A. Mihills, C.P.A.*, for the petitioners.

*James K. Polk, Esq.*, and *Harold F. Noneman, Esq.*, for the respondent.

638

**OPINION.**

MATTHEWS: In the brief filed on their behalf the position of the petitioners is stated to be that the combined net loss sustained by the affiliated corporations in 1924 and 1925 should be carried forward as a unit and applied against the taxable net income of the affiliated group for 1926, and that the combined net loss sustained by the affiliated group in 1925 should be carried forward against the consolidated net income of the affiliated group for 1927 to the extent that it was not absorbed in being carried forward as a net loss deduction against income for 1926.

We cannot agree with the petitioners' contention. The record discloses that there was no taxable net income of the affiliated group until 1926, and that none of the companies sustaining a net loss in 1925 had any net income for 1926 or 1927, with the exception of the Continental Legal & Protective Association, which had a net loss of $86.55 in 1925 and a net income of $666.15 in 1926. This Board and the courts have repeatedly held that the statutory net loss of a corporation can be applied only to the income of that corporation and that this is as true in respect of affiliated corporations as of independent corporations. The principle is well established that net losses sustained by members of an affiliated group for a prior year may enter into the computation of consolidated net income only to the extent that the net loss is allowed as a deduction in determining the net income of the member entitled to claim the deduction. *Sweets Co. of America* v. *Commissioner*, 40 Fed. (2d) 436; *Swift & Co.* v. *United States*, 38 Fed. (2d) 365; *Commissioner* v. *Ben Ginsburg Co.*, 54 Fed. (2d) 238. Thus, in the instant case, the net loss attributable to any one of the affiliated companies for 1925 may not be used as a deduction in 1926 beyond the point where there is income of that company to absorb it; that is, it may not be used to produce a loss which would enter into the computation of consolidated net income. Although the citation of cases in support of this

principle may be multiplied, it will suffice to refer to *Woolford Realty Co.* v. *Rose*, 286 U.S. 319; and *Delaware & Hudson Co.*, 26 B.T.A. 520; affd., 65 Fed. (2d) 292; certiorari denied, 290 U.S. 670. Under the ruling laid down in *Kaiwiki Sugar Co., Ltd.*, 21 B.T.A. 997; affd., 63 Fed. (2d) 822, we hold that the portion of the consolidated statutory net loss assignable to the Continental Legal & Protective Association should be applied against that company's net income for 1926, which would bring about a slight reduction in the consolidated income of the affiliated group for 1926.

One of the affiliated companies, the Allegheny Garbage Co., is entitled to deductions from its income for the years 1925 and 1926 in the respective amounts of $2,428.05 and $1,172.40 on account of losses incurred through the disposition of horses used for delivery purposes. We accordingly hold that the sum of $1,172.40 should be deducted from that company's income for 1926, which deduction will also reduce the consolidated net income of the affiliated group for 1926. The sum of $2,428.05 is likewise deductible from that company's income for 1925 and this deduction will increase the consolidated net loss of the affiliated group for 1925. No deficiencies have been asserted for 1925, for which year there was no taxable income of the affiliated group, and since we have held that the consolidated net loss for 1925 cannot be carried forward as a deduction, under the circumstances presented herein, the deduction of $2,428.05 to which the Allegheny Garbage Co. is entitled for 1925 will have no effect upon the recomputation of the deficiencies for 1926 except to increase slightly that portion of the consolidated statutory net loss for 1925 which is assignable to the Continental Legal & Protective Association, which corporation alone had a net loss in 1925 and a net income in 1926.

One issue remains for our determination. The amended petition filed in Docket No. 48880 contains the allegation that the respondent erred in failing to allow the loss of $114,348.91 sustained in 1927 by the Pittsburgh Melting Co., one of the affiliated corporations, on account of closing out the business of its subsidiary, the Charles R. Luker Co. The loss claimed represents the difference between the sum of $167,624.63, which was the cost to the Pittsburgh Melting Co. of the entire capital stock of the Charles R. Luker Co., and the amount of $53,275.72, representing an account receivable from the Pittsburgh Melting Co. to the Charles R. Luker Co. This alleged loss was not deducted on the consolidated income tax return filed by the Three Rivers Securities Corporation for the year 1927 and has not been allowed by the respondent.

The Charles R. Luker Co. was incorporated in November 1919 and, like the Pittsburgh Melting Co., was engaged in the business of gathering scraps from butchers, turning them into tallow, and

rendering them to make cracklings which were resold or ground into chicken feed. The Charles R. Luker Co. never paid any dividends. Its books show an operating profit of $14,728.76 for the period January 1 to June 30, 1920, but it sustained a loss of $40,435.44 for the next six-month period. The company continued to operate at a loss and in June 1924 its plant located at Altoona, Pennsylvania, was sold to persons not connected with the company or its affiliated companies. The Charles R. Luker Co. conducted little business after the sale of this plant. One of the officers of the Pittsburgh Melting Co., who was the only witness at the hearing of these proceedings, testified with respect to closing out the business of the Charles R. Luker Co.:

Each year we would send a man out to see where we could locate a new plant, the New England states, New York, Ohio, Indiana, or some other place. We kept this Luker Company, figuring we were going to use it for one of these plants we would open up, but in 1927 we decided not to open any plants on the outside, and that was the end of the Luker Company.

It was testified that upon the sale of its plant in June 1924 the company took a purchase money mortgage of $6,000 on the property sold and that there was a balance of $3,000 due on this mortgage in 1927. One of the officers of the company had advanced more than $7,000 of his own money for the benefit of the company and the mortgage was turned over to him in 1927. The Altoona plant had sold for $22,000 and the proceeds of the sale, over and above the amount of the mortgage, were turned over to the Pittsburgh Melting Co. Apparently this cash payment was treated as an advance to the Pittsburgh Melting Co., for it is stated in the brief filed on behalf of the petitioners that the account receivable of $53,275.72 on the books of the Charles R. Luker Co. consisted of advances made to the Pittsburgh Melting Co., together with charges for services rendered or supplies furnished, and it was testified that any advances to the Pittsburgh Melting Co. would have been included in this account receivable. Since the company had no assets in 1927 except this account receivable and the above mentioned mortgage and they were both disposed of during that year, it would seem that the company was completely liquidated in 1927, even though it does not appear to have been dissolved. A formal dissolution of the subsidiary company is not essential to establish the loss of the parent corporation growing out of the subsidiary's liquidation in the taxable year. *Burnet* v. *Aluminum Goods Mfg. Co.*, 287 U.S. 544. And for years prior to 1929 the liquidation of a subsidiary during the period of affiliation is not considered as an intercompany transaction. G.C.M. 11676, C.B. XII–1, p. 75. The case of *Ilfeld Co.* v. *Hernandez*, 292 U.S. 62, relates to the loss on the liquidation of subsidiaries in 1929 and is therefore not in point. We are of the opinion that

644

the Pittsburgh Melting Co. sustained a deductible loss in 1927 on account of its ownership of the capital stock of the Charles R. Luker Co. The deduction to which the Pittsburgh Melting Co. is entitled is measured by the cost of its investment in the capital stock of the Charles R. Luker Co., or $167,624.63, less the amount received by the Pittsburgh Melting Co. on the liquidation of the Charles R. Luker Co., or $53,275.72 (the amount of the account receivable which the subsidiary held against the parent corporation), and the loss thus arrived at should be adjusted on account of any operating losses of the Charles R. Luker Co. during the period of affiliation which are reflected in the consolidated income for such period, as set out in the stipulation entered into between the parties hereto. *W. M. Ritter Lumber Co.*, 30 B.T.A. 231. The losses of the Luker Co. during the period of affiliation, which are to be taken into consideration, are $17,759.13 in 1921 and $4,493.20 in 1922, and that portion of the loss of $783.85 in 1923 which was used as an offset against the income of the companies having income in that year and which is not reflected in the consolidated net loss for the year. In *Kaiwiki Sugar Co., supra*, we held that the statutory net loss assignable to each member, which, considered separately, sustained a net loss, is the same proportion of the consolidated net loss which the net loss of the member is to the sum of the net losses of all the members sustaining net losses. The difference between the net loss sustained by the Luker Co. in 1923 and that portion of the consolidated net loss assignable to it is the amount which has been offset against the income of the companies having income, and this amount should be added to the losses of 1921 and 1922, which were deducted from income of those years.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*