AMERICAN FOUNDERS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FOUNDERS GENERAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AMERICAN FOUNDERS OFFICE BUILDING, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AMERICAN FOUNDERS CORPORATION (TRANSFEREES), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 59266–59268, 61048.   Promulgated July 24, 1934.

*Henry J. Richardson, Esq.*, for the petitioners.
*J. A. Lyons, Esq.*, for the respondent.

OPINION.

McMAHON: The question presented for determination is whether the consolidated taxable income of the petitioners, affiliated corporations, for the fiscal year ended November 30, 1928, should include any amount as profit derived by the General Corporation and the Office Building Corporation, from the sale by them in that year of preferred and common stock in the Founders Trust, which was the predecessor of the Founders Corporation as the parent of the affiliated group. The sale by the subsidiaries of stock of the parent had no effect upon the affiliation.

The petitioners contend that the affiliated group should be treated as a single taxpayer or a single " income computing unit " and that no income resulted from the dealings by the General Corporation and the Office Building Corporation in the stock of the Founders Trust. Petitioners claim that this is particularly true with regard to that portion of the stock which was acquired by the subsidiary from the parent corporation at issuance. With regard to such stock the petitioners' position is that the acquisition was an intercompany transaction which should be ignored, that it should be treated as if it had never happened, and that the sale by the subsidiary of the stock must be considered as having been a sale by the parent issuing company directly to the public.

In view of more recent decisions of the courts and the Board we are unable to accede to the views of the petitioners.

In *Commissioner* v. *Van Camp Packing Co.*, 67 Fed. (2d) 596, a subsidiary of the Van Camp Packing Co. purchased shares of stock of the Van Camp Packing Co. in 1924 and sold them in 1926 at an amount above their cost. Both the purchase and the sale were with parties outside of the affiliation. In that case the United States Circuit Court of Appeals for the Seventh Circuit reversed the decision of the Board in *Van Camp Packing Co.*, 26 B.T.A. 256, and held that upon the sale of the stock taxable gain was realized. The court there stated in part:

Section 240 did not require affiliated corporations to make consolidated return, but it was optional with them. The returns might be separate or consolidated, as the greater advantage of the group might suggest. *But, had there been no consolidated return, and had each of the group made separate return, the gain on this stock transaction would have been taxable to Van Camp Tank Car Company.*

Section 240 (a) of the Revenue Act of 1926 does not purport to alter any subject-matter of taxation. *It does not make taxable that which without it would not be taxed, nor withdraw from taxation that which would otherwise have been taxable.* While it authorizes the single return for the affiliated group, this has to do, not with the specific items of taxation or deduction,

but only with the manner of the return and the grouping of gains and losses, so that deductible losses accruing to one or more of the affiliates may be deducted from the total gains of all the affiliates. If this course is advantageous to the group, it may make consolidated return accordingly.

In our judgment, the question in no manner depends on whether the consolidated return may be denominated the return of a "single taxpayer." In a certain sense, the one making such return may be so designated, but only in the sense of making a single return for the affiliates to enable them to take the advantages which the statute accords to such affiliates. *But for all other purposes they remain as they were—individual taxpayers.*

In *Woolford Realty Co.* v. *Rose, Collector,* 286 U.S. 319 (52 S.Ct. 568, 570, 76 L. Ed. 1128), the court said: "The fact is not to be ignored that each of two or more corporations joining (under section 240) in a consolidated return is none the less a taxpayer. *Commissioner* v. *Ginsburg Co.,* 54 F. (2d) 238, 239. By the express terms of the statute (section 240 (b)) the tax when computed is to be assessed, in the absence of agreement to the contrary, upon the respective affiliated corporations ' on the basis of the net income properly assignable to each.' 'The term "taxpayer" means any person subject to a tax imposed by this Act.' * * * A corporation does not cease to be such a person by affiliating with another."

\* \* \* \* \* \* \*

*If this gain would have been, but for the consolidated return, taxable to Van Camp Tank Car Company, its taxability remained unaffected by the making of a consolidated return.* [Emphasis supplied.]

The case of *Commissioner* v. *Van Camp Packing Co., supra,* is directly in point in the instant proceeding as to most of the stock which was dealt in, namely, that which was both purchased from and sold to parties outside of the affiliated group, and supports the conclusion which we have reached. To the same effect is *James McCutcheon,* 30 B.T.A. 1177. These cases are also, in our opinion, governing in principle as to the remainder of the transactions, namely, those in which the subsidiary, the General Corporation, acquired stock from the parent, the Founders Trust, at issuance, *and sold it to parties outside the affiliated group.* We see no reason for a differentiation in this respect.

*Commissioner* v. *Van Camp Packing Co., supra,* is, we believe, in accord with the weight of authority. The following cases, while not directly in point, indicate the disposition of the courts and the Board, when dealing with income and deductions, to recognize the separate entity of affiliated corporations for all purposes except for the purposes of the computation of tax, when the transactions are not purely intercompany transactions. *Woolford Realty Co.* v. *Rose,* 286 U.S. 319; *Burnet* v. *Aluminum Goods Mfg. Co.,* 287 U.S. 544; *Commissioner* v. *Ginsburg Co.,* 54 Fed. (2d) 238; *Delaware & Hudson Co.,* 26 B.T.A. 520; affd., 65 Fed. (2d) 292; certiorari denied, 290 U.S. 670; *Seiberling Rubber Co.,* 70 Fed. (2d) 651; *Walker Products Corp.,* 30 B.T.A. 636; *Remco Steamship Co.,* 30 B.T.A. 579; and *New York Ontario & Western Ry. Co.,* 30 B.T.A. 408.

*Ilfeld Co.* v. *Hernandez*, 292 U.S. 62, is not in point here, since, as stated in *Walker Products Corp.*, *supra*, it " relates to the loss on the liquidation of subsidiaries in 1929 " and it involved the construction of the Commissioner's Regulations 75, which have no application prior to the year 1929. Cf. *Niagara Shares Corp.*, 30 B.T.A. 668.

In these proceedings the transactions were not purely internal so as to render them purely intercompany transactions which are ignored for income tax purposes. Cf. *Helvering* v. *Gulf, Mobile & Northern R.R. Co.*, 71 Fed. (2d) 953, and *Worcester Salt Co.*, 29 B.T.A. 526. In the latter case we stated in part:.

* * * The Group, after the transfer of assets and issuance of bonds, was still in the same situation as before—that is, the group still owned the assets and merely held its own bonds. The exchange was an innocuous internal event. * * *

In the alternative the petitioners contend that the basis for determining the gain derived by the General Corporation upon the disposition of the shares of preferred and common stock which it acquired from the Founders Trust as a part of the original issue should be the market value of such stock at the time of acquisition rather than the amount which the General Corporation paid for the stock. The General Corporation paid $50 per share for the preferred and $86 per share for the common. At that time the bid and asked prices of the preferred stock were $44 and $49, respectively, and the bid and asked prices of the common stock were $106 and $113, respectively. In our opinion this contention of the petitioners must also fail. The basis for the determination of gain or loss upon the sale or other disposition of property is its cost. Sec. 113 (a), Revenue Act of 1928.

On brief counsel for respondent states as follows:

Article 603 of Regulations 74 [see footnote no. 1] provides that the basis for determining gain or loss by a corporation from the sale or other disposition of property acquired by it during the period of affiliation from a corporation with which it was affiliated shall be the same as it would be in the hands of the corporation from which it was acquired, and that this is true whether the property was sold or disposed of during or after the period of affiliation. The Regulation does not specifically apply to capital stock as Article 34 of

[1] ART. 603. *Basis of property acquired during affiliation.*—The basis for determining gain or loss by a corporation from the sale or other disposition of property acquired by it during a period of affiliation from a corporation with which it was affiliated shall be the same as it would be in the hands of the corporation from which acquired. This is true whether the property was sold or disposed of during or after the period of affiliation. For the purpose of this article, the term "period of affiliation" means the period during which such corporations were affiliated (determined in accordance with the law applicable thereto) but does oot include any taxable year beginning on or after January 1, 1922, unless a consolidated return was made, nor any taxable year after the taxable year 1928.

Regulations 75 does but the result necessarily would be the same if the Regulation is held to apply.

\*     \*     \*     \*     \*     \*     \*

\* \* \* So, in the present case, the stock sold by the parent corporation to the subsidiary is deemed to have been equal in value to the cash paid therefor and the stock in the hands of the Founders General Corporation has a basis equal to the amount paid therefor by it. It follows that by no method of reasoning could a cost basis for said stock to the Founders General Corporation different from the amount of cash paid therefor be upheld. The above statements are predicated upon the assumption that the stock transferred to Founders General Corporation was stock then issued by American Founders Trust for the first time. If the petitioners claim a basis different from that determined by respondent, the burden is upon them to prove what the basis of the stock in the hands of the parent was, and the record is silent as to whether this stock constituted an original issue or was stock acquired by the parent by dealing in its own stock.

We agree that the result as to the basis would be the same in the instant proceeding if article 603 were applicable; but we deem it unnecessary to here decide whether article 603 is applicable.

The petitioners cite *Pennsylvania Indemnity Co.*, 30 B.T.A. 413. That case is not here governing. There a corporation purchased from a wholly owned subsidiary, securities at a price greatly in excess of the market price and immediately sold them at a price to net less than the market price when acquired. We there held that the parent corporation was entitled to deduct from gross income the difference between the fair market value of the securities at the date acquired and the price at which sold, but was not entitled to deduct a loss based upon the price paid to the subsidiary. We there stated in part:

\* \* \* We are of the opinion, however, that the statute which permits a corporation to deduct from its gross income losses sustained upon the sales of property contemplates normal business transactions. Where a corporation for one reason or another purchases property at an amount in excess of the fair market value or in excess of the market price the transaction is not a normal business transaction.

\* \* \* The petitioner paid for the securities acquired from its subsidiaries an amount in excess of their fair market value for the purpose of bettering the financial condition of its subsidiaries. The substance of the transaction was a transfer by the petitioner to the subsidiaries of the excess of the price paid over the market value. *That amount did not represent a part of the cost of the securities.* [Emphasis supplied.]

In the instant proceeding the cost of the stock to the subsidiaries is clearly shown and we must use such cost as the basis for the determination of the gain. From the evidence we can not say that the transactions in question were not normal business transactions.

It follows that the respondent's determination must be approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*