SECURITY COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57090.   Promulgated October 24, 1935.

*Claude I. Parker*, *Esq.*, and *John B. Milliken*, *Esq.*, for the petitioner.

*Ralph E. Smith*, *Esq.*, for the respondent.

SMITH: This is a proceeding for the redetermination of deficiencies of $93,353.10 and $106,111.80 in income tax for the years 1927 and 1928, respectively.

The question in issue is whether profit which was derived by a member of an affiliated group from the sale of stock of another member of the group, where the stock in question was acquired in the form of stock dividends and the sale did not break the affiliation, is taxable.

The facts are contained in a signed stipulation of the parties. They may be briefly summarized as follows: The Security Trust & Savings Bank (hereinafter sometimes referred to as the bank) is a California corporation, organized in 1889. The petitioner, Security Co., is a securities affiliate of the bank. It is a California corporation, incorporated December 18, 1922, with its principal place of business at Los Angeles. It was incorporated " for the purpose of engaging in certain undertakings which are closely connected with and incidental to, but not technically within, the field of banking activities." It was affiliated throughout the years 1927 and 1928 with the bank and with the bank filed consolidated returns for those years, and tax liability has been computed by the respondent upon a consolidated basis.

The entire outstanding capital stock of the petitioner has at all times been held by trustees for the benefit of the stockholders of the bank, and throughout the years 1927 and 1928 each outstanding certificate representing a share or shares of the capital stock of the bank was endorsed as follows:

Under the terms of a certain Trust Agreement dated July 1, 1922, between the Security Trust & Savings Bank, party of the first part, and J. F. Sartori and others as Trustees, party of the second part, and William H. Allen, Jr., and others as stockholders of the said bank, parties of the third part, the registered holder of the share or shares of stock of the Security Trust & Savings Bank represented by this certificate of stock is the owner of a beneficial interest in the capital stock of the Security Company, a corporation organized pursuant to said agreement, from time to time held by the Trustees under said agreement rateably with all other stockholders of the said bank who have a beneficial interest in the capital stock of the said Security Company; the said beneficial interest is transferable only by the transfer on the books of the said bank of the shares of stock represented by the within certificate of stock, and any transfer of said stock carries with it a proportionate beneficial interest in the stock of the Security Company.

Under the declaration of trust the original capital of the petitioner was provided by a special dividend from the bank, to which the

stockholders waived claim. The declaration of trust further provided that:

> * * * any other or further special dividends, whether cash dividends, or stock dividend's, which may be in the future declared by the Board of Directors of the said bank for the purpose of supplying additional capital or surplus of the Security Company, may likewise be paid to the said trustees, and to this end the stockholders hereby assign and transfer to the trustees all their right, title and interest in and to said other or further special dividends declared for such purpose, and do empower and' direct the bank to pay any such dividend or dividends to the trustees for such purpose.

In conformity with the provisions of the trust agreement, the bank declared and distributed several stock dividends, among which the following only are involved in the proposed income tax deficiencies for the years 1927 and 1928:

| Date of distribution | Shares distributed |
|---|---|
| December 28, 1925 | 2,500 |
| April 1, 1927 | 2,250 |
| May 2, 1927 | 5,000 |

These stock dividend shares of the bank were issued to the aforesaid trustees after first endorsing thereon the legend set out above and the trustees immediately transferred such stock dividend shares to the petitioner. The petitioner in turn issued shares of its capital stock to the trustees, in whom the legal title to such shares of petitioner has at all times been vested in conformity with the provisions of the trust agreement.

During 1927 and 1928 petitioner sold certain of the stock dividend shares of the bank (endorsed with the legend provisions referred to). The stipulation provides:

> If the sale by petitioner, as a member of the affiliated group, of shares of the capital stock of its affiliate, the Security Trust & Savings Bank (with aforesaid legend endorsed thereon) which shares were received by petitioner pursuant to the trust agreement dated July 1, 1922, was such a transaction as gave rise to the receipt of taxable income, then the amount thereof for each of said years is as follows:

| | |
|---|---|
| For the year 1927 | $645,275.30 |
| For the year 1928 | 650,151.36 |

Taxable profit in the amount of $217,934.75 was reported by petitioner for the year 1927 with respect to the sale of Security Trust & Savings Bank stock, endorsed as aforesaid, a part of which represented profit on shares purchased from and sold to the public, and a part profit on the sale of the stock dividend shares.

Certain issues raised by petitioner have been settled by stipulation of the parties. The petitioner admits liability for income tax upon the profit realized by it from the sale of shares of stock of the bank purchased by it from the public, and by it sold to the public.

It is the contention of the petitioner herein that the sale by it of the stock dividend shares of its affiliate, the Security Trust & Savings Bank, was a capital transaction in the stock of another member of the affiliated group, and therefore, could result in no taxable income. In support of this contention it cites *United Drug Co.* v. *Nichols*, 21 Fed. (2d) 160; *Farmers Deposit National Bank*, 5 B. T. A. 520; *H. S. Crocker Co.*, 5 B. T. A. 537; *Interurban Construction Co.*, 5 B. T. A. 529; *Liberty Agency Co.*, 5 B. T. A. 778; *Baker-Vawter Co.*, 7 B. T. A. 594; *John Scowcroft & Sons Co.*, 18 B. T. A. 532; *Ohio Central Telephone Co.*, 28 B. T. A. 96.

The Board cases mentioned above were cited upon the theory that an affiliated group constitutes a unit which for income tax purposes is to be regarded as a single taxpayer. Since the decision of the Circuit Court of Appeals for the Seventh Circuit in *Commissioner* v. *Van Camp Packing Co.*, 67 Fed. (2d) 596, this Board has reversed its position upon this subject. Thus, in *James McCutcheon & Co.*, 30 B. T. A. 1177, this Board said:

> Inasmuch as under more recent decisions, as indicated above, affiliated corporations filing a consolidated return are not to be treated as one and the same taxpayer, but as taxpayers retaining their separate identities, and as not all dealings by the corporation in its capital stock are to be considered purely as capital transactions resulting in neither taxable gain nor deductible loss, it appears that the basis upon which our decisions in the *Scowcroft* and *Van Camp* cases were reached can not be sustained.

See also *Founders General Corporation*, 30 B. T. A. 1256. In *Founders General Corporation* v. *Commissioner*, 79 Fed. (2d) 6, the court observed:

> That the business unity which is the basis of affiliation does not permit corporate identities to be ignored as a general rule is clearly established. See *Helvering* v. *Post & Sheldon Corp.*, 71 Fed. (2) 930; *Commissioner of Internal Revenue* v. *Liberty Nat. Co.*, 58 Fed. (2) 57. The affiliation makes the group which files of right a consolidated return a tax computing unit but leaves the individual corporations the taxpayers. *Woolford Realty Co.* v. *Rose*, 286 U. S. 219; *Commissioner* v. *Ben Ginsburg Co.*, 54 Fed. (2) 238. There would be little substance to this distinction, if for tax purposes the stock of a parent when owned by its subsidiary were to be treated, in disregard of the actual fact, the same as though it were the capital stock of the subsidiary. On the contrary, common ownership of the business by means of the requisite amount of stock ownership by the same interests to produce an affiliated group ordinarily cuts no deeper than to make taxable income computable by the elimination of certain intercompany transactions in determining both the profit and loss of the taxpayers to arrive fairly at the net taxable income of each. The parent's stock is property in the hands of the subsidiary in every practical sense as much when acquired directly from the parent as it is when acquired by the subsidiary from outside sources. * * *

In the instant case it is clear that the stock dividend shares in the hands of the petitioner constituted property owned by it. It is stipu-

lated that when it sold some of these shares to the public in 1927 and 1928 it realized profits therefrom of $645,275.30 in 1927 and $650,-151.36 in 1928. Our only question is whether those profits are to be recognized for income tax. We can not see that they stand upon any different plane from profits realized from the sale to the public of any other species of property.

The petitioner points out that the Circuit Court of Appeals for the Second Circuit in *Founders General Corporation* v. *Commissioner*, *supra*, reversed our decision entered pursuant to our opinion in *Founders General Corporation*, *supra*, and relies upon the court's opinion in support of its contentions. The taxable year involved in that case was a fiscal year ended November 29, 1928. In the course of its opinion the court stated:

* * * when Congress provided in Sec. 113 (2) [(a)] (12) of the 1928 Act that the " basis in case of property acquired by a corporation during any period, in the taxable year 1929 or any subsequent taxable year, in respect of which a consolidated return is made by such corporation under section 141 of this Act shall be determined in accordance with regulations prescribed under section 141 (b)" the Commissioner treated such stock as this as "property" and provided in T. R. 75: Art. 34 (a) (1) (b) that the basis should " be determined and adjusted in the same manner as if the selling corporation and the issuing corporation had never been members of an affiliated group." Even under the regulations in force during this taxable period the amount the petitioner obtained upon the sale of the stock it acquired directly from its parent in excess of what it paid the parent for that stock would be taxable income but for one thing. That circumstance is that for stock obtained from the parent there is no cost basis from which profit can be computed.

In the hands of the parent, its capital stock has no cost basis. There can be no gain or loss to it upon the original issue and sale of its own stock. See Art. 66 of T. R. 74. When the petitioner acquired the stock from its parent its basis for determining gain or loss upon its sale became that of the parent. See, Art. 603 of T. R. 74; Sec. 113 (12) of the Revenue Act of 1928 (C. 852, 45 Stat. 791). The stock, therefore, had no cost basis in the hands of the petitioner. For this reason the apparent profit derived by the petitioner cannot be recognized for taxation since it cannot be computed as a profit under the law and regulations then existing.

The Board is not in the same quandary in this case which the court was in in that. We have no question of a base for the purpose of computing the profits. Those are stipulated. The case is not strictly in point.

We conclude that the stipulated profits from the sales of the stock dividend shares in 1927 and 1928 are liable to income tax.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*